Opinion
 

 LILLIE, P. J.
 

 Plaintiffs, formerly two pilots employed by defendant United Air Lines, Inc. (United), appeal from summary judgment granted in favor of defendants on plaintiffs’ complaint for disability discrimination and negligence.
 
 [1]
 
 The principal issue on appeal is whether triable issues of fact exist as to whether, pursuant to the Fair Employment and Housing Act (Gov. Code, § 12940 et seq.), United “reasonably accommodated” plaintiffs after United learned that plaintiffs had been diagnosed with acquired immune deficiency syndrome (AIDS).
 

 
 *941
 
 Factual and Procedural Background
 

 Inasmuch as appellants do not challenge the trial court’s conclusion that they failed to identify any evidence which created a dispute as to any of the defendants’ 52 statements of undisputed facts which formed the basis for their motion for summary judgment, we deem the facts to be undisputed for purposes of this appeal. The following facts are gleaned from the moving parties’ separate statement of undisputed facts, supplemented with information from documents and declarations offered in support of, or in opposition to, the motion for summary judgment.
 

 A.
 
 Plaintiff Rafalowski.
 

 Rafalowski started employment with United as a flight officer in June 1985, and throughout his employment his performance evaluations were satisfactory or above. Commercial pilots must regularly undergo comprehensive physical examinations administered by a Federal Aviation Administration (FAA) medical examiner in order to receive a medical certificate from the FAA; at each FAA medical examination, a pilot is required to complete an application which includes a complete medical history identifying and explaining all medical conditions that the pilot has or has ever had; in addition, the pilot must list all visits in the last three years to a physician, physician assistant, or psychologist for treatment, examination, evaluation or counseling. If a pilot identifies a disqualifying physical condition on his application, medical certification will be denied or deferred to the FAA for further consideration. Pilots who have been diagnosed with AIDS or AIDS-defining conditions, such as Kaposi’s sarcoma, are not eligible to receive a medical certificate and are prohibited by the FAA from piloting an aircraft.
 

 As a matter of regular procedure at United, all pilots are subjected to routine physical examinations conducted by United medical staff. Blood tests taken at such physicals are subjected to lab work which could impact the pilot’s ability to continue flying.
 

 Although Rafalowski tested positive for human immunodeficiency virus (HIV) in 1985, on his June 10, 1994, application to the FAA for his medical certification, he stated only that he had surgery for a deviated septum performed by a Dr. Berman; he provided no other medical history and did not identify any other visits to other health care professionals.
 

 Rafalowski’s primary treating physician was Dr. Kooshian, who monitored Rafalowski’s AIDS; by early 1994, Dr. Kooshian diagnosed Rafalowski with AIDS and other AIDS-related opportunistic infections, including
 
 *942
 
 Kaposi’s sarcoma and oral thrush. Dr. Kooshian had treated Rafalowski’s Kaposi’s sarcoma with chemotherapy and drugs, and also prescribed a series of vitamin supplement infusions administered by a nurse. In 1993 and 1994, Rafalowski was treated and/or examined by a number of other doctors for his HIV and AIDS-related conditions.
 

 Tests results from Rafalowski’s company physical in early 1994 were abnormal, so he was asked to return for additional testing; the abnormal results were not present after the second test. Rafalowski never informed United that he had HIV or AIDS. Defendant Dr. Daner Reider, United’s regional flight surgeon who was responsible for fitness-for-duty evaluations, reviewed Rafalowski’s test results and drafted departmental correspondence to Rafalowski on June 6, 1994, stating that “Almost total resolution of all abnormal results, although triglycerides remain significantly high. Prompt decrease of abnormal liver tests strongly suggest some very acute process that has now resolved. It does not suggest infectious hepatitis but implies a toxic effect from some chemical. In most cases, the chemical most likely to cause such a problem is alcohol. Strongly recommend careful self-evaluation of drinking behavior. Call me if you have any questions.”
 

 Soon after June 6, 1994, Dr. Reider discussed Rafalowski’s test results with Rafalowski’s personal physician, Dr. Kooshian; Dr. Kooshian told him that Rafalowski had been treated for epistaxis (recurrent nosebleeds) and a malignancy, Kaposi’s sarcoma; Dr. Kooshian also explained that Rafalowski had been diagnosed with AIDS. On June 21, 1994, Dr. Reider received a letter from Dr. Kooshian which stated in pertinent part that “This letter is a follow-up to our telephone conversation yesterday, June 16, 1994. This is confirmation that [Rafalowski] has been placed on indefinite total disability secondary to recurrent epistaxis and a malignancy. This disability commenced on June 11, 1994.”
 

 Dr. Reider determined that Rafalowski could no longer physically qualify for a FAA medical certificate with his AIDS diagnosis, and recommended that his flight duties be removed and that he be permanently grounded. On June 24, 1994, Dr. Gary Kohn, United’s corporate medical director, placed Rafalowski on medical disability effective June 24, 1994, at the end of his sick leave eligibility.
 
 [2]
 
 At no time after his grounding did Rafalowski or Dr. Kooshian contact Dr. Reider to discuss or contest the grounding. Rafalowski
 
 *943
 
 applied for and received monthly disability benefits from the government. Rafalowski did not request an alternative job position after he was grounded by United. Dr. Kooshian testified in deposition that in June 1994, Rafalowski had multiple medical problems and was sick enough to be placed on indefinite disability; he was not healthy enough to hold a job where he would have to work eight hours a day, either standing for prolonged periods of time or sitting for prolonged periods of time. Rafalowski’s condition worsened; in October 1994, on occasion, Rafalowski began to use a wheelchair to get around; in December 1994, he was diagnosed with “CMV,” a viral infection of the spinal cord and central nervous system, which Dr. Kooshian testified caused a progressive muscle wasting and loss of use of his lower extremities with a minimal loss of vision and some mental confusion, or AIDS-related dementia.
 

 B.
 
 Plaintiff Prilliman.
 

 Ronald C. Prilliman began employment as a flight officer with United in June 1985, and thereafter received job performance evaluations of satisfactory or above. In 1990, he was diagnosed with HIV; in late 1993 he began seeing Dr. Kooshian to treat his HIV-positive condition; Prilliman was also treated by Drs. Kaslow and Shallenberger; by early 1994, Prilliman’s condition advanced to AIDS. In Prilliman’s July 1994 application to the FAA for his medical certification, the only item he listed in response to his medical history inquiry was “sinus surgery in July [1993]”; he listed two visits to a health professional in the last three years, including a visit to Dr. Kooshian for treatment for the flu. He did not identify HIV or AIDS in his medical history, or any of the numerous medications, infusions, X-rays, CAT scans or MRI’s he received in the preceding year; he also did not tell the FAA medical examiner that he was HIV-positive. Nor did Prilliman disclose his HIV/AIDS condition to United, Dr. Reider, or any other United doctors. From August 20 to 23,1994, Prilliman captained a 737 aircraft from Los Angeles to Denver to San Antonio to New York to Chicago to Seattle to Los Angeles to Cabo San Lucas and back to Los Angeles; he had no difficulty in the safe and effective operation of the aircraft.
 

 United first learned of Prilliman’s disqualifying medical condition of AIDS on August 25, 1994, from the results of tests performed by a United physician on August 24, 1994, as part of United’s regular physicals for pilots. Based on the results of blood tests taken at the examination and the medical history given by Prilliman, Dr. Reider decided to ground Prilliman pending a further investigation into his medical condition; Dr. Reider contacted Dr. Kooshian, who verified that Prilliman was HIV-positive with a diagnosis of AIDS. United then determined that Prilliman no longer satisfied
 
 *944
 
 FAA physical requirements and discontinued his flight responsibilities and placed him on medical disability effective October 27, 1994, at the end of his sick leave eligibility.
 

 After Prilliman was grounded, a United administrative coordinator advised him to apply for Social Security benefits in order to supplement his disability income, and he did so. As a result of his grounding, Prilliman began to receive from United a monthly disability benefit of $6,610, or 55 percent of his salary; he also currently receives a monthly Social Security disability benefit of $1,351, and for a year he had received a monthly disability benefit of $1,340 from the State of California. Prilliman did not request an alternative job position after he was grounded by United. In answers to interrogatories, United admitted that at the time the plaintiffs were grounded, United did not consider them for any other positions (other than flight officer) because they “did not request any other positions at the time of grounding.”
 

 When Prilliman informed the FAA of his HIV/AIDS condition for the first time in December 1994, the FAA immediately denied his medical certification. According to a September 1995 evaluation and report by a neuropsychiatrist, Dr. Eric Miller, Prilliman was “functioning in the average to high average range of general intellectual ability. Overall, Mr. Prilliman is functioning well within the normal range with respect to language functioning, visuospatial ability, verbal memory, and motor skills. We noted some very mild variability in delayed recall of nonverbal stimuli, although all exam results were still within the average range. Measures of executive functioning were mixed with most of his scores in the average range, but with one measure of cognitive flexibility and problem solving in the borderline impaired range. Since this is Mr. Prilliman’s first assessment, it is unclear if this is a new area of compromise, a preexisting area of weakness, or because the test was administered near the end of a 7.5 hour testing session. . . . [H It is our impression that the patient’s neuropsychological functioning is intact and well within normal limits.”
 

 C.
 
 Procedural Background.
 

 The first cause of action of plaintiffs’ first amended complaint (complaint) seeks damages for violation of the Fair Employment and Housing Act (FEHA); the complaint alleges that United and Dr. Reider violated the FEHA by placing plaintiffs on medical retirement, and by failing to provide them reasonable accommodations. The second cause of action for negligence alleges that United failed to train Dr. Reider and others regarding plaintiffs’ rights under the FEHA, and failed properly to supervise Dr. Reider and others, causing plaintiffs mental anxiety, upset, and loss of earnings.
 

 
 *945
 
 After answering the complaint, defendants moved for summary judgment. With respect to the first and second causes of action, defendants contended that they were not negligent and did not violate the FEHA because plaintiffs’ medical conditions disqualified them from medical certification by the FAA and rendered them ineligible to fly as commercial pilots for United; United also maintained that United did not fail to accommodate plaintiffs’ disabilities. United argued that “The FEHA does not impose liability upon an employer for failure to provide a specific accommodation where, as here, the employee failed to request that accommodation,” and that “due to their physical conditions after their grounding, plaintiffs cannot identify a single vacant position they were capable of performing.”
 

 In opposition to the motion for summary judgment, plaintiffs contended that the duty to find a reasonable accommodation arises when the employer is aware an employee’s limitations due to a disability impede his job performance and the employee is not required to request accommodation in order for the employer’s duty to arise. Plaintiffs also argued that placing them on permanent disability at 55 percent of their income does not, as suggested by defendants, constitute a reasonable accommodation because it does not preserve the disabled employee’s employment status.
 

 Plaintiffs also contended that in discovery, defendants admitted that from June 1994 to December 1995, United had 23 pilot instructor positions open and hired 23 individuals without offering any of the positions to them.
 

 In reply, United contended that because of Rafalowski’s deteriorated physical condition at the time of his grounding, his accommodation claim is moot because Dr. Kooshian agreed with his grounding, placed him on disability, and United was never contacted by Rafalowski or his doctor thereafter that his condition had improved; in fact, Rafalowski’s condition worsened; since October 1994, Rafalowski used a wheelchair to transport himself and in December 1994, he was diagnosed with CMV, a viral infection of the spinal cord, leading to severe dementia, progressive muscle wasting, loss of use of his lower extremities and some loss of vision.
 

 As to Prilliman, United maintained that under some circumstances, a leave of absence can be a reasonable accommodation; at the time of Prilliman’s grounding, he was placed on compensated and insured disability leave; thereafter, Prilliman did not request any accommodation, nor was he terminated; rather, he was accommodated when placed on paid disability. According to United, the burden was then on Prilliman to identify a different accommodation, if so desired; since Prilliman made no such alternative request, he cannot now fault United for not providing an alternative accommodation. As to the flight instructor positions, United also maintained that
 
 *946
 
 these positions entailed flight responsibilities and required the instructor to have FAA medical certification, which Prilliman did not have. United also pointed out that insurance forms prepared by Dr. Kooshian and signed by Prilliman in October 1994 state that Prilliman had been placed on “permanent total disability,” the nature of the illness/disability listed as “1-cocci-doidmycosis, 2-severe anemia, 3-severe weight loss, 4-malabsorption syndrome.”
 

 After extensive oral argument on the motion, the court took the matter under submission. In its written ruling granting the motion for summary judgment, the court concluded that “At oral argument the court invited counsel to discuss the evidence with respect to each of the disputed facts and the court is now convinced that plaintiffs failed to identify any evidence that created a genuine triable issue of fact.” The court also stated that “Neither plaintiff requested an alternative job position after being grounded and have not identified any vacant position which they are capable of performing.”
 

 Plaintiffs filed timely notice of appeal from the summary judgment. In their briefs on appeal, appellants do not challenge the implied finding by the trial court that their grounding by United did not violate the provisions of the FEHA; rather, appellants’ principal contention is that a triable issue of fact exists on the issue of whether United met the requirement of the FEHA to reasonably accommodate their conditions. Appellants’ position is that their “forced retirement” was not a reasonable accommodation, and United had an obligation to take affirmative steps to help them find other positions with United. Respondents’ position is that because appellants sought and received state and federal disability benefits on the representation that they were totally disabled, they are estopped from taking a contrary position in this lawsuit, i.e., that they were physically able to work in some other position with United. In addition, respondents assert that, under the facts in this case, the offers of medical disability did constitute reasonable accommodation under the FEHA, and in the absence of any requests by appellants for an alternative accommodation, such as nonflight positions, United had no legal obligation to “predict or assume from their silence that they desired other, nonflight jobs.” Our first task, then, is to determine the nature and scope of the reasonable accommodation requirement of the FEHA.
 

 I
 

 Reasonable Accommodation Under the FEHA
 

 Under Government Code section 12940, it is an unlawful employment practice for an employer “to fail to make reasonable accommodation for the
 
 *947
 
 known physical or mental disability of an applicant or employee” (Gov. Code, § 12940, subd. (k)), and for an employer, “because of the . . . physical disability, mental disability, medical condition ... of any person, ... to discharge the person from employment ... or discriminate against the person in compensation or in terms, conditions or privileges of employment.” (Gov. Code, § 12940, subd. (a).)
 

 AIDS is a physical handicap within the meaning of Government Code former section 12926, subdivision (h), as defined by judicial decision.
 
 (Raytheon Co.
 
 v.
 
 California Fair Employment & Housing Com.
 
 (1989) 212 Cal.App.3d 1242, 1250 [261 Cal.Rptr. 197]; see now Gov. Code, § 12926, subd. (k); see also
 
 Cassista
 
 v.
 
 Community Foods, Inc.
 
 (1993) 5 Cal.4th 1050, 1060-1061 [22 Cal.Rptr.2d 287, 856 P.2d 1143] [Inasmuch as case law reveals a general consistency between the current and former versions of section 12926, it is a relatively simple matter to harmonize the current and former versions of section 12926 in their definitions of disability and handicap.].) There is no dispute in the instant case that appellants are, or were, persons with a physical disability under the FEHA.
 

 Employers must make reasonable accommodations to the disability of an individual unless the employer can demonstrate that doing so would impose an “undue hardship.” (Cal. Code Regs., tit. 2, § 7293.9;
 
 Sargent
 
 v.
 
 Litton Systems, Inc.
 
 (N.D.Cal. 1994) 841 F.Supp. 956, 960.) “Reasonable accommodation may, but does not necessarily, include, nor is it limited to, such measures as: [¶(1) Accessibility. Making existing facilities used by employees readily accessible to and usable by individuals with disabilities; [¶ (2) Job Restructuring. Job restructuring, reassignment to a vacant position, part-time or modified work schedules, acquisition or modification of equipment or devices, adjustment or modification of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar actions.” (Cal. Code Regs., tit. 2, § 7293.9, subd. (a).)
 

 “ ‘Undue hardship’ means an action requiring significant difficulty or expense, when considered in light of the following factors: [¶ (1) the nature and cost of the accommodation needed; [¶ (2) the overall financial resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility, and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility; [¶ (3) the overall financial resources of the covered entity, the overall size of the business of a covered entity with respect to the number of employees, and the number, type, and location of its facilities; [¶ (4) the type of operations, including the composition, structure, and functions of the workforce of the entity; [¶ (5) the geographic separateness, administrative, or fiscal relationship of the facility or facilities.” (Cal. Code Regs., tit. 2, § 7293.9, subd. (b).)
 

 
 *948
 
 “The law and its regulations make clear that the term ‘reasonable accommodation’ is to be interpreted flexibly. The regulations provide a non-exhaustive list of accommodations that includes not only making premises accessible but also ‘[j]ob restructuring, assignment or transfer, [and] part-time or modified work schedules . . . .’ [Citation.] The law and the regulations clearly contemplate not only that employers remove obstacles that are in the way of the progress of the disabled, but that they actively re-structure their way of doing business in order to accommodate the needs of their disabled employees. There are limits on the re-structuring that an employer needs to do. Accommodations need only be ‘reasonable.’ An employer need not undertake an accommodation that would create an ‘undue hardship.’ [Citation.] But to read into the law a hard and fast rule that its effects stop at some artificial boundary would be to ignore the broad sweep of the law.”
 
 (Sargent
 
 v.
 
 Litton Systems, Inc., supra,
 
 841 F.Supp. 956, 961.)
 

 Inasmuch as the FEHA and the interpretative regulations in California Code of Regulations were modeled on the federal Rehabilitation Act of 1973, and the Americans with Disabilities Act of 1990, decisions interpreting those laws may be useful in deciding cases under the FEHA.
 
 (Cassista
 
 v.
 
 Community Foods, Inc., supra, 5
 
 Cal.4th 1050, 1063.) In
 
 School Bd. of Nassau County
 
 v.
 
 Arline
 
 (1987) 480 U.S. 273 [94 L.Ed.2d 307, 107 S.Ct. 1123], the Supreme Court held that a teacher with tuberculosis may be considered a “handicapped individual” under section 504 of the Rehabilitation Act, and remanded the case to the district court to address the issue of whether the employer could reasonably accommodate the employee. (480 U.S. at p. 289 [107 S.Ct. at p. 1131].) In an apparent attempt to provide guidance to the court on remand, the court in
 
 Arline
 
 stated that “Employers have an affirmative obligation to make a reasonable accommodation for a handicapped employee. Although they are not required to find another job for an employee who is not qualified for the job he or she was doing, they cannot deny an employee alternative employment opportunities reasonably available under the employer’s existing policies.”
 
 (Id.,
 
 at p. 289, fn. 19 [107 S.Ct. at p. 1131].)
 

 In a case dealing with a postal worker with AIDS who requested transfer to another location where he could obtain better medical treatment, and who claimed the Postal Service’s refusal to transfer him violated section 501 of the Rehabilitation Act, the court in
 
 Buckingham
 
 v.
 
 U.S.
 
 (9th Cir. 1993) 998 F.2d 735, noted that the duty on employers under the Rehabilitation Act “goes beyond mere nondiscrimination; the regulations promulgated under section 501 emphasize the affirmative obligation to accommodate.” (998 F.2d at p. 739.) “An employer, to meet its burden under the Act, may not merely speculate that a suggested accommodation is not feasible. When accommodation is required to enable the employee to perform the essential
 
 *949
 
 functions of the job, the employer has a duty to ‘gather sufficient information from the applicant and qualified experts as needed to determine what accommodations are necessary to enable the applicant to perform the job. . .
 
 (Id.
 
 at p. 740.)
 

 Similarly, in a case dealing with the Americans with Disabilities Act (ADA) of 1990, the court in
 
 Reigel
 
 v.
 
 Kaiser Foundation Health Plan of N.C.
 
 (E.D.N.C. 1994) 859 F.Supp. 963, stated that “[A]n employer is not required to find another job for an employee who is no longer qualified to perform the duties of the job previously held but discontinued by virtue of a disability,
 
 unless the employer normally provides such alternative employment under its existing
 
 policies.”
 
 (Id.
 
 at p. 973, italics added.)
 

 As explained in
 
 Shiring
 
 v.
 
 Runyon
 
 (3d Cir. 1996) 90 F.3d 827, 831-832: “Before 1992, disabled individuals had to prove [in claims under the Rehabilitation Act of 1973] that they were qualified only for the job that they were employed to do. ‘[Employers] are not required to find another job for an employee who is not qualified for the job he or she is doing.’ [Citation.] Although reassignment was an option under the 1990 Americans with Disabilities Act, see 42 U.S.C. § 12111(9)(B) (reasonable accommodation may include reassignment to a vacant position), it was not required of federal employers under the Rehabilitation Act. However, in 1992, the Rehabilitation Act was amended . . . . [¶ Pursuant to this amendment, the Code of Federal Regulations was amended effective October 31, 1992 to provide that employers shall offer to reassign nonprobationary employees if those employees become unable to perform the essential functions of their jobs. The reassignment should be to an already funded, vacant position within the same commuting area, and at the same grade or level 29 C.F.R. § 1614.203(g). The use of the word ‘shall’ indicates that this reassignment offer is mandatory, unless the reassignment would cause the agency undue hardship. Therefore, courts should consider whether reassignment is possible in determining whether an individual seeking relief under the Rehabilitation Act is an otherwise qualified individual.”
 

 The Supreme Court of Washington, in interpreting a statute and regulation similar to California Government Code section 12940, subdivision (k),
 
 [3]
 
 held that “The duty of an employer reasonably to accommodate an employee’s
 
 *950
 
 handicap does not arise until the employer is ‘aware of respondent’s disability and physical limitations.’ [Citations.] The employee bears the burden of giving the employer notice of the disability. [Citation.] This notice then triggers the employer’s burden to take ‘positive steps’ to accommodate the employee’s limitations. . . . [¶ . . . The employee, of course, retains a duty to cooperate with the employer’s efforts by explaining [his or] her disability and qualifications. [Citation.] Reasonable accommodation thus envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the employee’s capabilities and available positions.”
 
 (Goodman
 
 v.
 
 Boeing Co.
 
 (1995) 127 Wn.2d 401 [899 P.2d 1265, 1269-1270].)
 

 The court in
 
 Goodman
 
 cited with approval
 
 Curtis
 
 v.
 
 Security Bank of Washington
 
 (1993) 69 Wn.App. 12 [847 P.2d 507] and
 
 Dean
 
 v.
 
 Municipality of Metropolitan
 
 (1985) 104 Wn.2d 627 [708 P.2d 393].
 
 Dean
 
 held that under Washington state discrimination law, an employer has a duty to take affirmative steps to make known to the disabled employee other job opportunities within the company and to determine whether the employee is qualified for those positions. (708 P.2d at p. 400.)
 
 Curtis
 
 held that an employee who was laid off after she developed arthritis in her hips made out a prima facie case of handicap discrimination even though she did not apply for open positions with the employer bank because “Her failure to seek the open positions can be attributed to the Bank’s failure to inform her that future jobs would involve teller work. The Bank’s duty to accommodate required it to inform Ms. Curtis that future jobs might involve teller work, perform capabilities testing on the open positions, encourage her to apply for the vacant positions she could perform, and affirmatively assist her in applying for those positions.” (847 P.2d at pp. 511-512.)
 

 In light of the foregoing, and consistent with the interpretation of the concept of reasonable accommodation under the FEHA as set out in section 7293.9 of title 2 of the California Code of Regulations, we conclude that an employer who knows of the disability of an employee has an affirmative duty to make known to the employee other suitable job opportunities with
 
 *951
 
 the employer and to determine whether the employee is interested in, and qualified for, those positions, if the employer can do so without undue hardship or if the employer offers similar assistance or benefit to other disabled or nondisabled employees or has a policy of offering such assistance or benefit to any other employees. Such a duty is also consistent with the provisions of Government Code section 12940, subdivision (a), which, with specified exceptions, provides in pertinent part that it is an unlawful employment practice for an employer, because of the physical disability or medical condition of any person, “to discriminate against the person in compensation or in terms, conditions or privileges of employment.”
 
 [4]
 

 With the foregoing principles in mind, we determine whether the trial court properly granted summary judgment with respect to the complaint as to Prilliman and Rafalowski.
 

 II
 

 Summary Judgment Principles
 

 “ ‘Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) We review the trial court’s decision to grant [defendants] summary judgment de novo.’ [Citation.]”
 
 (Lopez
 
 v.
 
 Superior Court
 
 (1996) 45 Cal.App.4th 705, 713 [52 Cal.Rptr.2d 821].) An appellate court is not bound by the trial court’s stated reasons, if any, supporting its ruling; we review the ruling, not the rationale.
 
 (Hulett
 
 v.
 
 Farmers Ins. Exchange
 
 (1992) 10 Cal.App.4th 1051, 1058 [12 Cal.Rptr.2d 902].) In an action for employment discrimination under the FEHA, one court has stated that “If the employer presents admissible evidence either that one or more of the plaintiff’s prima facie elements is lacking, or that the adverse employment action was based on legitimate, nondiscriminatory factors, the employer will be entitled to summary judgment unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant’s showing.”
 
 (Caldwell
 
 v.
 
 Paramount Unified School Dist.
 
 (1995) 41 Cal.App.4th 189, 203 [48 Cal.Rptr.2d 448]; but see
 
 Martin
 
 v.
 
 Lockheed Missiles & Space Co.
 
 (1994) 29 Cal.App.4th 1718, 1730 [35 Cal.Rptr.2d 181].)
 

 In its ruling the trial court appeared to grant summary judgment on the ground that the plaintiffs did not request an alternative job position with
 
 *952
 
 United and failed to establish there was a vacant position they could have performed. As explained above, the foregoing factors are not defenses to a claim for disability discrimination' because an employer who is aware of an employee’s disability has an affirmative duty to help the employee find an alternative job within the company if the employer offers similar assistance to other employees or can do so without undue hardship. Further, on summary judgment, the moving party employer has the burden of establishing that there were no vacant positions the employee could have performed. Thus, although the trial court may have applied incorrect law, we review the summary judgment motion de novo. We therefore proceed to address the issue of whether, under correct principles of law, respondents were entitled to summary judgment as to the claims of the appellants.
 

 III
 

 Summary Judgment Properly Granted as to Rafalowski
 

 On the instant record, we conclude that summary judgment is properly granted in favor of respondents as to appellant Rafalowski because it is undisputed that any violation by United of the duty to reasonably accommodate him would not have caused Rafalowski any damages because Rafalowski would have been incapable of performing any alternative job position. According to Rafalowski’s doctor, in June 1994, when he was grounded, Rafalowski had multiple medical problems, including recurrent nosebleeds and Kaposi’s sarcoma; Rafalowski was not healthy enough to work an eight-hour day, either sitting or standing, and was eligible to be placed on indefinite disability. Moreover, it is clear from our record that Rafalowski’s condition unfortunately only became worse after June 1994; by August, he was claiming that he had trouble concentrating and following directions, as it had taken him three days to fill out a four-page application, and needed instructions given or read to him two or three times; by October 1994, he was using on occasion a wheelchair to get around, and by December 1994, he was diagnosed with a virus of the central nervous system.
 

 Thus, had United undertaken to investigate the possibility of other job positions for Rafalowski upon learning of his AIDS diagnosis in June 1994, it is undisputed that he would not have been able to perform any of those positions. Accordingly, any purported violation of the duty to reasonably accommodate Rafalowski by United would not have caused him any damages. Inasmuch as causation of damage is a necessary element of both causes of action at issue on this appeal, and no such damage is shown, we conclude that summary judgment was properly granted in favor of respondents as to the claims of Rafalowski.
 

 
 *953
 
 IV
 

 Summary Judgment Improperly Granted as to Prilliman
 

 The issue of whether summary judgment was properly granted as to Prilliman is more complex because of the fact that there is evidence in our record that as late as September 1995, or over a year after his grounding, Prilliman was functioning well within normal limits as to intellectual ability and motor skills. The inference arises that Prilliman was capable of performing some type of nonflight position, and may have qualified for an alternative position with United. However, our record also indicates that Prilliman was receiving Social Security benefits for disability. Respondents contend that the assertion of disability for the purpose of obtaining Social Security benefits constitutes a judicial estoppel and precludes Prilliman from arguing in his FEHA case that he was capable of performing an alternative position with United.
 

 Before we address the issue of judicial estoppel, it is important to point out that in the absence of the application of the judicial estoppel doctrine, our record discloses triable issues of fact which would preclude summary judgment in respondents’ favor.
 

 A.
 
 Triable Issues of Fact Exist as to Whether United Fulfilled Its Duty of Reasonable Accommodation.
 

 The primary flaw in respondents’ motion for summary judgment is that it fails to address the issue of what policies or resources United made or makes available for its employees, disabled or not, who are unable to perform their former positions, and what alternative positions were open or available given Prilliman’s job skills and physical condition in August 1994, or thereafter. A reasonable inference on our record is that United placed Prilliman on medical disability “without exploring any other options with [him] in a meaningful way. The hallmark of FEHA is the flexibility it requires of employers to work with its disabled employees to accommodate their needs. [Citations.] From the undisputed facts before this court, it is not possible to tell either what efforts at accommodation were made, or what efforts could have been undertaken without undue hardship. For this reason, it is improper to hold on a summary judgment motion that [the employer] reasonably accommodated [the employee’s] disability.”
 
 (Sargent
 
 v.
 
 Litton Systems, Inc., supra,
 
 841 F.Supp. 956, 962.) While respondents argue that “Both plaintiffs were reasonably accommodated when they were placed on paid and insured disability leave,” we are still left with the triable issue of fact as to whether disability leave, or some other reasonable accommodation, such as an alternative job position, could have been provided to Prilliman without undue
 
 *954
 
 hardship to United. “Ordinarily, the reasonableness of an accommodation is an issue for the jury.”
 
 (Schmidt
 
 v.
 
 Safeway, Inc.
 
 (D.Or. 1994) 864 F.Supp. 991, 997.) The motion for summary judgment does not provide enough facts to ascertain whether United met its duty of reasonable accommodation, and particularly whether United has a policy of attempting to find alternative positions for its employees, or whether, without undue hardship, it could have found an alternative position for Prilliman.
 

 We also find without merit respondents’ suggestion that the disabled employee must first come forward and request a specific accommodation before the employer has a duty to investigate such accommodation. In other words, respondents maintain that they reasonably accommodated Prilliman by offering him insured disability leave, and they had no duty to investigate other potential accommodations, such as alternative job positions with United, because Prilliman did not request an alternative position. However, respondents fail to cite applicable authority to support their contention.
 

 In a case cited by respondents, involving the ADA, the court stated that “The statute does not require the plaintiff to speak any magic words before he is subject to its protections. The employee need not mention the ADA or even the term ‘accommodation.’ Of course, the employee can’t expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge. [Citations.] An employer also has no duty to accommodate an employee who denies she has a disability or denies a need for accommodation.”
 
 (Schmidt
 
 v.
 
 Safeway, Inc., supra,
 
 864 F.Supp. 991, 997.) In
 
 Schmidt,
 
 the court granted partial summary judgment in favor of the
 
 employee,
 
 and thus rejected the employer’s defense that the employee must expressly request accommodation in order for the employer’s duty of reasonable accommodation to arise.
 
 (Id.
 
 at p. 998.)
 

 Nor does
 
 Ferry
 
 v.
 
 Roosevelt Bank
 
 (E.D.Mo. 1995) 883 F.Supp. 435, support respondents’ contention that under the FEHA the employee must request a specific accommodation before the employer has a duty to consider it.
 
 Ferry
 
 involved a claim under the ADA by an employee who was having trouble performing her job, was offered unpaid medical leave, and turned it down before she was terminated. The court in
 
 Ferry
 
 stated that it “need not resolve whether the ADA requires the employee to request an accommodation from his or her employer before the employer’s duty to accommodate arises because, in this case, defendant complied with the law by initiating a discussion with Ferry concerning possible accommodations prior to her termination. The record demonstrates that after Ferry’s performance failed to
 
 *955
 
 improve during the five-month probationary period, defendant offered Ferry unpaid medical leave in lieu of termination. ... By taking this step, defendant initiated the ‘interactive process’ envisioned by the ADA which ‘involves both the employer and the qualified individual with a disability’ in determining the appropriate accommodation. . . . Defendant’s offer to accommodate Ferry with unpaid medical leave shifted the burden to Ferry to request the particular accommodation she believed would enable her to perform the essential functions of her job adequately. [¶ Ferry failed to discharge this burden. Ferry simply declined defendant’s offer, . . . and was discharged. Ferry did not request that defendant permit her to work shorter hours or part-time so she could commit more time to learning the new computer system. . . . Yet, Ferry now alleges that defendant should have accommodated her ‘either permitting her to work shorter hours or on a part-time basis, and defendant could have permitted her to commit any extra time to learn the new system, but refused to do same.’ ” (883 F.Supp. at p. 441, fn. omitted.)
 

 Ferry
 
 is inapplicable to the instant case. Not only did the court refrain from addressing the issue of whether the ADA required the employee to request a particular accommodation, but
 
 Ferry
 
 involved an employee who claimed the employer failed to make accommodations to permit the employee to continue to perform her job. The instant case, on the other hand, involves an employee who indisputably was disqualified from performing his job as pilot because his diagnosis of AIDS precluded him from obtaining FAA certification for flying an aircraft, so the issue here is whether United had a policy or practice to find alternative positions for Prilliman and whether he was capable of performing such other positions. These latter issues were not addressed by the court in
 
 Ferry.
 
 Accordingly, we conclude that respondents failed to establish a defense based on the failure of Prilliman to come forward and request an alternative job placement with United.
 

 We also conclude that triable issues of fact exist with respect to Prilliman’s cause of action for negligence. Without merit is respondents’ argument that the negligence claim is waived in that “Plaintiffs argue on appeal, for the very first time, that United had a duty to gather sufficient information from the applicant and qualified experts as needed to determine what accommodations are necessary to enable the applicant to perform the [alternative] job.” This issue was clearly raised in the complaint, where it is alleged that “The aforesaid acts of Defendant United, including but not limited to the failure to train Dr. Reider and others regarding plaintiffs’ rights under the FEHA, and the failure to properly supervise Dr. Reider and others, constituted negligence; such negligence was a substantial factor in causing plaintiffs to suffer mental anxiety and upset, [and] . . . [a]s a direct
 
 *956
 
 and proximate result of the aforementioned acts of Defendant United, Prilliman [has] incurred a loss of earnings . . . Moreover, the issue of the extent of United’s duty to reasonably accommodate Prilliman was raised by United in its summary judgment motion. In United’s reply to the opposition, United expressly addressed the issue of whether “United was required to accommodate [Prilliman] by locating alternative positions for him in the company even though he did not request any accommodation whatsoever.”
 

 Without merit also is respondents’ argument that even if the negligence claim is not waived, Prilliman has “not identified any facts that demonstrate that United failed to train or supervise Dr. Reider or any other employee with respect to United’s obligations or plaintiffs’ corresponding rights under the FEHA.” Here, respondents improperly place the burden on Prilliman, when respondents have the initial burden on summary judgment to show “ ‘that one or more elements of the cause of action . . .
 
 cannot be established,
 
 or that there is a complete defense to that cause of action.’ (437c, subd. (o)(2) . . . .) Once the defendant has met that burden, the burden shifts to the plaintiff to show ‘that a triable issue of one or more material facts exists as to that cause of action . . . .’”
 
 (Hunter
 
 v.
 
 Pacific Mechanical Corp.
 
 (1995) 37 Cal.App.4th 1282, 1285-1286 [44 Cal.Rptr.2d 335], fn. omitted.) “Nothing in the language of the 1992 adoption of section 437c, subdivision (n)(2), amendments abrogates this well-established summary judgment requirement that the initial burden rests with the moving party.”
 
 (Villa
 
 v.
 
 McFerren
 
 (1995) 35 Cal.App.4th 733, 744 [41 Cal.Rptr.2d 719].)
 

 Inasmuch as respondents’ separate statement of undisputed facts entirely fails to address the negligence claim, respondents were not entitled to summary judgment on this cause of action.
 

 B.
 
 Judicial Estoppel.
 

 By citing a host of federal cases upholding summary judgment in favor of employers on the ground of judicial estoppel, respondents implicitly contend that such line of federal cases governs the instant case and supports the trial court’s grant of summary judgment. However, as explained below, the doctrine of judicial estoppel is not uniformly defined or applied by the federal courts; moreover, application of the doctrine in this case is a matter governed by state law, not federal law.
 

 In granting or upholding summary judgment in favor of employers, the federal courts have applied various formulations of the judicial estoppel doctrine to estop plaintiffs who claim to be totally disabled in one proceeding from asserting an ADA claim in a subsequent suit based on the same
 
 *957
 
 facts. (See, e.g.,
 
 Bollenbacher
 
 v.
 
 Helena Chemical Co.
 
 (N.D.Ind. 1996) 934 F.Supp. 1015, 1027;
 
 Griffith
 
 v.
 
 Wal-Mart Stores, Inc.
 
 (E.D.Ky. 1996) 930 F.Supp. 1167] [ADA claim precluded by representations made by plaintiff in application for long-term Social Security disability benefits].) The gravamen of this doctrine, also known as the “doctrine of preclusion of inconsistent positions,” precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.
 
 (Rissetto
 
 v.
 
 Plumbers and Steamfitters Local
 
 343 (9th Cir. 1996) 94 F.3d 597, 600 [doctrine applied to age discrimination claim under FEHA where plaintiff received workers’ compensation total temporary disability benefits].) The cases explain application of the doctrine on the ground that plaintiff “cannot speak out of both sides of her mouth with equal vigor and credibility before this court. Plaintiff now seeks money damages from the [employer under the ADA] on her assertion that she was physically willing and able to work during the same period of time that she was regularly collecting disability payments on her assertions that she was physically unable to work.”
 
 (Reigel
 
 v.
 
 Kaiser Foundation Health Plan of N.C.
 
 (E.D.N.C. 1994) 859 F.Supp. 963, 970.)
 

 “ ‘The policies underlying preclusion of inconsistent positions are general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings. . . . Judicial estoppel is intended to protect against a litigant playing fast and loose with the courts .... Because it is intended to protect the dignity of the judicial process, it is an equitable doctrine invoked by a court at its discretion.’ ”
 
 (Rissetto
 
 v.
 
 Plumbers and Steamfitters Local 343, supra,
 
 94 F.3d at p. 601.) However, as acknowledged by the court in
 
 Rissetto,
 
 “ ‘the judicial estoppel [doctrine] remains unsettled.[¶ The majority of circuits recognizing the doctrine hold that it is inapplicable unless the inconsistent statement was actually adopted by the court in the earlier litigation. . . . The minority view, in contrast, holds that the doctrine applies even if the litigant was unsuccessful in asserting the inconsistent position, if by his change of position he is playing “fast and loose” with the court. . . .’ [Citation.] [¶ This Circuit has not yet had occasion to decide whether to follow the ‘majority’ view or the ‘minority’ view. In many of our cases, the apparently inconsistent position was not really incompatible with the party’s earlier position, [citations], or the party’s change in position was justified, [citations].” (94 F.3d at pp. 600-601, fn. omitted.) The court in
 
 Rissetto,
 
 however, forthrightly acknowledges that a federal district court in
 
 AFN, Inc.
 
 v.
 
 Schlott, Inc.
 
 (D.N.J. 1992) 798 F.Supp. 219, questioned the Ninth Circuit’s characterization of the “majority” and “minority” positions, since only a few cases had held categorically that prior judicial adoption is required for application of judicial estoppel, with the Third Circuit in
 
 Ryan Operations G.P.
 
 v.
 
 Santiam-Midwest Lumber Co.
 
 (3d Cir. 1996) 81 F.3d 355,
 
 *958
 
 recently adding itself to the “minority” side of the ledger in holding that success in a prior proceeding is not required. (94 F.3d at p. 601, fn. 3.)
 

 The court in
 
 Rissetto
 
 also noted that judicial estoppel “is sometimes said to apply to ‘preclude[ ] parties from taking inconsistent positions in the same litigation,’ [citation], but our cases as well as those from other circuits have applied the doctrine in disregard of this supposed limitation.” (94 F.3d at p. 605, italics omitted.) Thus, the doctrine is not confined to inconsistent positions taken in the same litigation
 
 (ibid.),
 
 and though called judicial estoppel, the doctrine has been applied to proceedings in which a party to an administrative proceeding obtains a favorable order that he seeks to repudiate in a subsequent judicial proceeding. (94 F.3d at p. 604.)
 

 The doctrine of judicial estoppel has not been applied by federal courts in all cases where the plaintiff has received social security disability benefits. The court in
 
 Smith
 
 v.
 
 Dovenmuehle Mortg., Inc.
 
 (N.D.Ill. 1994) 859 F.Supp. 1138 stated: “The Seventh Circuit recently has stated that a finding of disability by the Social Security Administration can not be construed as a judgment that the plaintiff is unable to do his job.
 
 Overton
 
 v.
 
 Reilly,
 
 977 F.2d 1190, 1196 (7th Cir.1992). The district court in
 
 Overton
 
 originally granted summary judgment for the defendant due, in part, to the SSA’s finding that the plaintiff was entitled to disability benefits because he was ‘ “unable to perform any substantial gainful activity.” ’ The Court of Appeals reversed. The court rejected the very argument defendant proffers here: [¶ [E]ven if a finding of disability could have preclusive effect in a private lawsuit, such a finding is consistent with a claim that the disabled person is ‘qualified’ to do his job under the Rehabilitation Act. [Citation.] The court further recognized that the SSA’s decision to award disability benefits does not necessarily translate into a determination that the recipient is unable to find work within the economy. Even if the SSA does make such a determination, that does not necessarily mean that the claimant will not find a job. [Citation.] [¶ In the present case, the SSA awarded Smith disability benefits based on his representations that he was suffering from AIDS and that his condition had forced him to stop working. However, as stated in
 
 Overton,
 
 the SSA’s decision to award benefits is not synonymous with a determination that plaintiff is not a ‘qualified individual’ under the ADA. Nor does it amount to a determination that the plaintiff can not find work in the economy. This is particularly true in the present case because Smith has found another job as a full-time administrator. [¶ . . . . [¶ Defendant’s position would place plaintiff in the untenable position of choosing between his right to seek disability benefits and his right to seek redress for an alleged violation of the ADA. Moreover, it would conflict with one of the stated purposes of the ADA which is to combat ‘the continuing existence of unfair and unnecessary discrimination
 
 *959
 
 and prejudice [which] denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars from unnecessary expenses resulting in dependency and nonproductivity.’ 42 U.S.C. § 12101(a)(9).” (859 F.Supp. at pp. 1141-1142, fns. omitted.)
 

 “Similarly, in
 
 Kupferschmidt
 
 v.
 
 Runyon,
 
 827 F.Supp. 570 (E.D.Wisc. 1993), the court simply held that the receipt of social security disability benefits, per se, did not preclude the plaintiff from proving that she could perform the essential function of her job. [Citation.] Lastly, in
 
 Lawrence
 
 v.
 
 United States I.C.C.,
 
 629 F.Supp. 819 (E.D.Pa. 1985), the court found no contradiction between the plaintiff’s representations to the SSA and his ADA claim because the former consisted only of his assertion that he could not perform all the functions of his prior job, not that his disability prevented him from working at all. [Citation.]”
 
 (Griffith
 
 v.
 
 Wal-Mart Stores, Inc., supra,
 
 930 F.Supp. 1167, 1173, fn. and italics omitted.)
 
 [5]
 

 Significantly, the Ninth Circuit in
 
 Rissetto
 
 v.
 
 Plumbers and Steamfitters Local 343, supra,
 
 94 F.3d 597, did not address the issue of judicial estoppel with respect to the plaintiff’s FEHA claim as a matter of state law, but as a matter of federal law: “Preliminarily, in light of the fact that state law supplies the rule of decision on plaintiff’s FEHA claim, we must determine what law applies to the question whether plaintiff is judicially estopped from proceeding with that claim. [¶ . . . None of this court’s cases says anything about the question of what estoppel law governs in such a situation.” (94 F.3d at p. 602.) “[F]ederal law governs the application of judicial estoppel in federal court. Judicial estoppel enables a court to protect itself from manipulation. The interested party is thus the court in which a litigant takes a position incompatible with one the litigant has previously taken. The tribunal in which the litigant made the first statement could also be interested . . . , but it is not in a position to do anything about its interest. Therefore, for all practical purposes, the interests of the second court are uniquely implicated and threatened by the taking of an incompatible position.” (94 F.3d at pp. 603-604.)
 

 
 *960
 
 In light of the foregoing, we reject respondents’ assertion that federal law governs the issue of judicial estoppel in this case, brought in state court. We conclude that state law governs the issue. Accordingly, the foregoing federal cases, and others cited by respondents, are not dispositive here. We now turn to the development of the concept of judicial estoppel by the California courts.
 

 The California courts which have addressed the doctrine of judicial estoppel observe that “This form of estoppel ‘has been said to be one of vague application, and in many cases it has been held inoperative, or has not been applied.’ [Citation.] It cannot be invoked where the position first assumed was taken as a result of ignorance or mistake. [Citation.] The position must be clearly inconsistent so that one necessarily excludes the other. The application has also sometimes been limited by the requirement that to permit one party to change must be unjust to the other party.”
 
 (Coleman
 
 v.
 
 Southern Pacific Co.
 
 (1956) 141 Cal.App.2d 121, 128 [296 P.2d 386].) The court in
 
 Coleman
 
 determined that a jury instruction based on the doctrine of judicial estoppel was erroneous, as the doctrine did not apply under the circumstances, where the inconsistency of the positions taken by plaintiff was not sufficiently clear, and the nature of the prior statements made by plaintiff’s attorney at a prior trial were not of the “unconscionable character” required to cause an estoppel. (141 Cal.App.2d at pp. 129-130; see also
 
 Associated Creditors’ Agency
 
 v.
 
 Wong
 
 (1963) 216 Cal.App.2d 61, 67 [30 Cal.Rptr. 705] [characterizing
 
 form of
 
 estoppel in
 
 Coleman
 
 as “quasiestoppel, of lesser definiteness in scope than estoppel by judgment,” and “of vague application”].)
 

 Twenty years after
 
 Coleman,
 
 the court in
 
 Ng
 
 v.
 
 Hudson
 
 (1977) 75 Cal.App.3d 250 [142 Cal.Rptr. 69], refused to apply the judicial estoppel doctrine to preclude a plaintiff from maintaining on appeal that the trial court committed instructional error by failing to instruct on the aggravation of a preexisting vertebral disc condition because her testimony that she did not suffer from any disability prior to the subject accident was not clearly inconsistent with her request for an instruction pertaining to a dormant pre-existing condition, in that pain and disability need not always accompany a dormant condition. The court in
 
 Ng
 
 remarked that “Defendant has not cited any cases supporting application of this doctrine to the present case. The proper application of this doctrine is at best uncertain; nevertheless, certain limitations on it are clear. The estoppel cannot be invoked where the first position was not clearly inconsistent so that holding one position necessarily excludes the other. Nor can it be asserted where the first position was based upon ignorance of facts.” (75 Cal.App.3d at p. 258.)
 

 Although the doctrine of judicial estoppel has been addressed more recently in other factual and procedural contexts not particularly pertinent here
 
 *961
 
 (see
 
 In re Marriage of Dekker
 
 (1993) 17 Cal.App.4th 842, 849-850 [21 Cal.Rptr.2d 642];
 
 Billmeyer
 
 v.
 
 Plaza Bank of Commerce
 
 (1995) 42 Cal.App.4th 1086, 1095-1096 [50 Cal.Rptr.2d 119]), the parties have not brought to our attention any case which has expressly applied the doctrine under circumstances similar to those here.
 

 On the other hand, a line of cases has developed the rule that where a party in discovery has made an admission which justifies summary judgment in favor of his opponent, he cannot attempt to defeat the summary judgment motion by submitting a declaration contradicting the admission. As explained by the court in
 
 D’Amico
 
 v.
 
 Board of Medical Examiners
 
 (1974) 11 Cal.3d 1, 21-22 [112 Cal.Rptr. 786, 520 P.2d 10]: “Moreover, when discovery has produced an admission or concession on the part of the party opposing summary judgment which demonstrates that there is no factual issue to be tried, certain of those stem requirements applicable in a normal case [i.e., liberal construction of counteraffidavits to summary judgment motion] are relaxed or altered in their operation. ...[¶ The reasons for this attitude toward the legitimate products of discovery are clear. As the law recognizes in other contexts (see Evid. Code, §§ 1220-1230) admissions against interest have a very high credibility value. This is especially true when, as in this case, the admission is obtained not in the normal course of human activities and affairs but in the context of an established pretrial procedure whose purpose is to elicit facts. Accordingly, when such an admission becomes relevant to the determination, on motion for summary judgment, of whether or not there exist triable issues of fact (as opposed to legal issues) between the parties, it is entitled to and should receive a kind of deference not normally accorded evidentiary allegations in affidavits.” (Italics omitted; see also
 
 Roth
 
 v.
 
 Rhodes
 
 (1994) 25 Cal.App.4th 530, 545 [30 Cal.Rptr.2d 706] [admissions made in deposition testimony];
 
 Jacobs
 
 v.
 
 Fire Ins. Exchange
 
 (1995) 36 Cal.App.4th 1258, 1270 [42 Cal.Rptr.2d 906] deposition testimony];
 
 Visueta
 
 v.
 
 General Motors Corp.
 
 (1991) 234 Cal.App.3d 1609,1613 [286 Cal.Rptr. 402] [deposition testimony];
 
 Nunez
 
 v.
 
 R’Bibo
 
 (1989) 211 Cal.App.3d 559, 563 [260 Cal.Rptr. 1] [deposition testimony];
 
 Leasman
 
 v.
 
 Beech Aircraft Corp.
 
 (1975) 48 Cal.App.3d 376, 381-382 [121 Cal.Rptr. 768] [admissions in deposition testimony and interrogatory answers].)
 

 The related principle of “judicial admission” has not been accorded as broad application as the
 
 D’Amico
 
 rule. “A judicial admission (by affirmative allegation in a pleading) is a conclusive concession of the truth of the matter admitted.”
 
 (Kirby
 
 v.
 
 Albert D. Seeno Construction Co.
 
 (1992) 11 Cal.App.4th 1059, 1066, fn. 4 [14 Cal.Rptr.2d 604].) As noted by the court in
 
 Kirby,
 
 “. . . this court previously has rejected a broad reading of the language
 
 *962
 
 regarding the sanctity of admissions used by the court in
 
 Leasman.
 
 In
 
 Price
 
 v.
 
 Wells Fargo Bank
 
 (1989) 213 Cal.App.3d 465 . . . , we explained that a ‘summary judgment should not be based on tacit admissions or fragmentary and equivocal concessions, which are contradicted by other credible evidence.’ [Citation.] We approved of reliance on admissions made in the course of discovery when they are uncontradicted or contradicted only by self-serving declarations of a party. [Citation.] [¶ Seeno asks us to give conclusive effect to an ambiguous statement in an unverified complaint and to ignore the explanation of the statement contained in deposition testimony under oath. This is precisely what we refused to do in
 
 Price.
 
 When the facts submitted in opposition to a summary judgment motion indicate the existence of a material factual issue, summary judgment should not be entered based on mistaken legal conclusions in the complaint. [Citation.] Summary judgment is also inappropriate where the opposing party submits evidence indicating that a mistake was made.
 
 (Mason
 
 v.
 
 Marriage & Family Center
 
 (1991) 228 Cal.App.3d 537, 545-546 . . . [mistaken answer to interrogatory does not support summary judgment].)” (11 Cal.App.4th at pp. 1066-1067.)
 

 We conclude that neither the judicial admission doctrine nor the
 
 D’Amico
 
 principle applies herein. Respondents have not pointed to any judicial admission in a pleading or to any discovery admission or concession by Prilliman which defeats his causes of action herein. Respondents rely upon the facts that Prilliman was receiving a disability benefit from United and government Social Security benefits, facts which he admitted in his deposition; however, these facts alone do not establish any defense, and in particular a defense based on the inability of Prilliman to perform an alternative job position with United.
 
 [6]
 
 According to a document dealing with Prilliman’s benefits submitted by respondents in support of their summary judgment motion, Prilliman’s United disability benefit “is payable as long as [he] remains permanently grounded and not re-employed by the Company in a flight qualified position until age 60 or for 5 years, whichever is greater.” Thus, the receipt of United disability benefits is based on Prilliman’s grounding and lack of reemployment by United in a flight qualified position,
 
 *963
 
 matters as to which there is no dispute herein. However, the receipt of such disability benefits does not answer the question as to whether United violated the FEHA by failing to make known to Prilliman other suitable job opportunities within United that do not require medical certification from the FAA.
 

 The only other evidence pertaining to Prilliman’s receipt of disability benefits offered by respondents in support of their summary judgment motion are Prilliman’s October 1994 applications for benefits submitted to US Life Agency Services, Inc., and Central States Health & Life Co. of Omaha. Both applications state that Prilliman was medically grounded from employment with United, and the reason for his unemployment was “medical disability.” In a portion to be completed by Prilliman’s doctor, Dr. Kooshian stated that Prilliman was disabled since August 25, 1994, with coccidoidmycosis, severe anemia, severe weight loss, and malabsorption syndrome and that “Patient has been placed on permanent total disability.” The estimated future disability was listed as “Permanent.”
 

 Although it is unclear from our record the purpose for which such applications were submitted, we infer that such applications were submitted so that Prilliman could receive the United disability insurance benefits described above, which are payable as long as Prilliman remains grounded and not reemployed - by United. Accordingly, we cannot infer from such applications that Prilliman made any representations inconsistent with his present claims under the FEHA.
 

 In light of the instant record we therefore conclude that respondents fail to show, as they must under principles of judicial estoppel set out in
 
 Coleman
 
 v.
 
 Southern Pacific Co., supra,
 
 141 Cal.App.2d 121, that Prilliman’s position in this lawsuit is “clearly inconsistent” with the position taken in applications for disability benefits. Nor have respondents shown that any change in position by Prilliman is “unjust” to respondents.
 

 We also note that in this case there is before us no evidence of any statements or representations made by Prilliman in his application for government Social Security benefits, so the federal cases cited by respondents, dealing with the concept of judicial estoppel by virtue of representations made to receive such government benefits, are inapposite. We thus conclude that the trial court erred to the extent that it granted summary judgment against Prilliman based on the principle of judicial estoppel. Moreover, inasmuch as the concept of judicial estoppel is an equitable doctrine, it must also be considered in this case that it was a United benefits coordinator who advised Prilliman to apply for such government disability benefits. This
 
 *964
 
 factor, and its impact on the application of the judicial estoppel doctrine, appears to be one which is not addressed in any cases cited by respondents.
 

 For all of the foregoing reasons, we conclude that summary judgment was improperly granted in respondents’ favor and against Prilliman.
 

 Disposition
 

 The judgment in favor of respondents and against appellant Rafalowski is affirmed; the judgment in favor of respondents and against appellant Prilliman is reversed and on remand, the trial court is directed to deny the motion for summary judgment as to Prilliman. The parties are to bear their own costs on appeal.
 

 Johnson, J., and Woods, J., concurred.
 

 Respondents’ petition for review by the Supreme Court was denied July 9, 1997.
 

 [1]
 

 Here, plaintiffs do not make any arguments with respect to causes of action for defamation, invasion of privacy, and violation of the Americans with Disabilities Act of 1990; we thus deem the latter claims to have been abandoned on this appeal. We also note that pending appeal, on March 26, 1996, plaintiff Rafalowski passed away; Rafalowski’s successor in interest under Code of Civil Procedure section 377.11 is Perry W. Lamont, who has filed an affidavit under Code of Civil Procedure section 377.32.
 

 [2]
 

 It can be inferred that Rafalowski was on sick leave at the time of his grounding. In an August 9, 1994, application for state disability benefits, Rafalowski indicated that he tried to work after he became ill, but experienced “severe symptoms” and worked only twenty-two days out of the last seven months; he did not then (August 9, 1994) feel well enough for any social activities; his reflexes were slower, his attention span was diminished, and it took him three days to fill out the four-page application because “I just can’t concentrate on it."
 

 [3]
 

 A
 
 Washington statute, Wash. Rev. Code section 49.60.010, provides that discrimination on the basis of any sensory, mental, or physical handicap is prohibited. “Liberal construction of RCW 49.60.010 is mandated to accomplish the purpose of eliminating and preventing discrimination. [Citations.] It is an unfair practice for an employer ‘[t]o discriminate against any person in compensation or in other terms or conditions of employment because of . . . the presence of any . . . handicap’. RCW 49.60.180(3). [¶ WAC 162-22 implements RCW 49.60.180. . . . Failure to reasonably accommodate an employee’s handicap is an unfair or
 
 *950
 
 discriminatory act.”
 
 (Curtis
 
 v.
 
 Security Bank of Washington
 
 (1993) 69 Wn.App. 12 [847 P.2d 507,510].) “WAC 162-22-080(1) provides: [¶ ‘It is an unfair practice for an employer to fail or refuse to make reasonable accommodations to the sensory, mental, or physical limitations of employees, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer’s business.’ ’’
 
 (Curtis
 
 v.
 
 Security Bank, supra,
 
 847 P.2d at p. 510, fn. 3.)
 

 Because of the similarity between the disability discrimination law of Washington and the California disability discrimination provisions, we find the foregoing Washington State cases useful in explicating the parameters of the employer’s duties under California Government Code section 12940, subdivision (k).
 

 [4]
 

 Section 7294.2, subdivision (a) of title 2 of the California Code of Regulations provides that “It shall be unlawful to condition any employment decision regarding an applicant or employee with a disability upon the waiver of any fringe benefit.”
 

 [5]
 

 Lawrence
 
 v.
 
 United States I.C.C.
 
 (E.D.Pa. 1985) 629 F.Supp. 819 appears to have implications for the instant case, where Prilliman is not claiming herein that he can perform his prior job as pilot; it is undisputed that he is disqualified from performing such job because of lack of FAA certification; rather, Prilliman’s claims herein are based on his assertion that he is capable of performing an alternative job position with United, and United violated the FEHA by failing to make known to him other suitable job opportunities. Respondents have not brought to our attention any case expressly addressing the specific reasonable accommodation issue herein in connection with the judicial estoppel doctrine based on receipt of Social Security benefits.
 

 [6]
 

 It is important to note that this issue logically arises only after it has been established or assumed that United violated the FEHA or breached its duty of reasonable accommodation in failing to make known to Prilliman other suitable job opportunities with United and to determine whether he was interested in, and qualified for, such positions, if United offers similar assistance or benefits to other employees or if United could do so without undue hardship. As we concluded above, triable issues of fact remain on these latter issues, and we do not intend to imply that we have resolved them on this appeal. However, assuming for purposes of this appeal such a violation or breach of the HiHA, Prilliman’s inability to perform an alternative position would itself constitute a defense based on the ground that any violation of the FEHA would not have caused Prilliman any damage. Thus, Prilliman’s physical condition is relevant to the causation issue. The judicial estoppel doctrine also can be perceived as addressing the same causation issue.