Filed 11/16/20  Telles v. Wal-Mart Associates CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| PAULA TELLES, | |
| Plaintiff and Appellant, | E072835 |
| v. | (Super.Ct.No. RIC1708605) |
| WAL-MART ASSOCIATES, INC., et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Sunshine S. Sykes, Judge.

Affirmed.

Shegerian & Associates, Inc., Carney R. Shegerian and David Harris for Plaintiff

and Appellant.

Ford & Harrison, Stefan H. Black, Shanda Y. Lowe and Timothy L. Reed for

Defendants and Respondents.

Paula Telles claimed that her former employer Wal-Mart Associates, Inc. and

Wal-Mart Stores, Inc. (collectively, WalMart) discriminated against her on the basis of

her age and disability.  She sued WalMart and several of its employees (individual

1

defendants), alleging claims for employment discrimination, failure to accommodate her disability, defamation, and related causes of action. Telles appeals from the summary judgment entered in favor of defendants. We affirm.

BACKGROUND

A. *Telles's Employment at WalMart*

Telles started working as a department manager at a WalMart store in Perris, California, in December 1991. Sometime in late 1998 or 1999, Telles injured her back and neck while at work. She thereafter took a medical leave of absence for approximately one year. She returned to work with unspecified restrictions. From 1999 through 2006, Telles worked as a people greeter and in various other positions that accommodated her restrictions. Telles's primary work responsibilities as a people greeter were to greet customers as they entered the store and to check customers' receipts upon exiting the store.

Telles was injured at work again in 2006. After that injury, Telles continued working in various light duty assignments, including as a people greeter, which was her last assignment starting in May 2015. Sometime before May 2016 (possibly in February 2016), Telles returned from another leave of absence taken for an unspecified reason.

In early May 2016, store manager Melvin Enriquez notified Telles and the other people greeters at the store that WalMart was eliminating the people greeter position. The people greeter position was being replaced by a new customer host position, which was going to be a part of the asset protection department. According to a human

2

resources manager for Telles's store, the customer host position included all of the same duties as the people greeter position but added certain security-related responsibilities. Reggie Brown was the asset protection manager responsible for interviewing and hiring people for the new customer host position. According to Brown, the customer host position differed from the people greeter position in that the customer host position required employees to stand the entire shift. People greeters, by contrast, were allowed to sit.

People greeters were eligible to transfer to other positions in the store, including to the customer host position. Telles testified that during the meeting with the people greeters Enriquez explained that the people greeters would need to look for open positions in the store and that they would "ha[ve] to see if [they] could perform it." Telles also claims that an unspecified person told her that the customer host position would "not be able to accommodate restrictions as easily because it required standing throughout the entire shift." Brown testified that people greeters who could not stand for an entire shift were not precluded from "getting" the customer host position, but he would encourage them to look for other positions within the store. After the meeting with Enriquez, Telles asked Enriquez what would happen if she was unable to find an open position. It is undisputed that he responded, "'Start thinking of retirement.'"

Sometime shortly after that meeting, Telles approached Brown and told him that she was interested in transitioning into the customer host position. Brown told Telles that she would have to interview for the position.[1]

B. *Telles's Termination*

Telles was terminated on May 11, 2016, when she was 61 years old. Telles was told that she was terminated for gross misconduct and integrity issues.

Telles testified that after she purchased several items from the store during her last break on that day, Brown stopped her after she exited the store and asked her to accompany him to the asset protection office.[2] Jesse Martinez, an asset protection associate, and an unidentified female employee of WalMart were also in the asset protection office. Telles's receipt for the purchases she had just made showed that she had bought five items, namely, three pairs of socks (ladies and girls) for 25 cents each, a camisole, and a box of laundry detergent. On the receipt, two items (two pairs of boys' pants) were voided during the transaction. It is undisputed that, contrary to what was reflected on the receipt, Telles exited the store with the following six items: three pairs of underwear, a pack of barrettes, a camisole, and laundry detergent.

---

[1] Telles claims that she applied for the customer host position in May 2016. However, the evidence she cites does not support that factual assertion. In her declaration, Telles stated, "I told Mr. Brown that I *wanted to apply* for the Customer Host position that was taking over for People Greeter." (Italics added.)

[2] Telles stated in her declaration that Brown was not alone when he approached her, but the point is not material to our analysis.

Telles testified that while she was in the asset protection office Martinez showed her surveillance video footage of her in the store while she purchased the merchandise and while she had the merchandise in her shopping cart before checking out. A compact disc containing some pertinent portions of the surveillance footage was submitted in the trial court as an exhibit supporting WalMart's motion for summary judgment. That exhibit was not included in the record on appeal.

Telles testified that Brown and Martinez explained to her that the video footage showed her changing labels on some items and not purchasing one item. In a declaration submitted in support of WalMart's motion, Martinez described in detail what he observed in the surveillance footage, including relevant time stamps. He described the footage as showing Telles removing price stickers from undergarments and replacing those stickers with clearance tags that she peeled off of a strip of clearance labels. He also said the footage showed that when Telles was making her purchases at a self-checkout register, she "scan[ned] one item twice while putting a different item in the bag."

Telles denied doing either of these things. She testified that in the meeting with Brown and Martinez she explained that she had taken the price stickers off of the undergarments to verify the size of the garments and that she then placed the original stickers back on the garments after completing that task. When Telles was ringing up the undergarments, she did not notice that they were ringing up as socks. She further explained that the employee who assisted her at the self-checkout register inadvertently voided two items. In a later declaration, she claimed that she had selected the items from

5

the clearance rack. Martinez failed to retain the initial portion of the surveillance footage showing Telles selecting merchandise to purchase.

At some point, Brown told Telles that he was leaving the office to check what merchandise was in the clearance aisle. Telles testified that when Brown returned, he told her that there were not any undergarments on clearance. Neither Brown nor Martinez interviewed the cashier who had assisted Telles when she was checking out. Enriquez made the decision to terminate Telles.

C. *The Litigation*

In October 2017, Telles filed an amended complaint against WalMart alleging employment discrimination on the basis of age and disability, wrongful termination, failure to reasonably accommodate her disability, and failure to engage in the interactive process. Against WalMart and numerous individual employees, including Brown and Martinez, Telles further alleged claims for defamation and intentional infliction of emotional distress.

Defendants moved for summary judgment or in the alternative summary adjudication. The trial court granted summary judgment in favor of defendants. As to Telles's discrimination claims, the trial court concluded that defendants had "met their initial burden showing that they had a legitimate nondiscriminatory reason for [Telles's] termination, i.e., that [Telles] switched price tags and under-rung merchandise." The court further concluded that Telles "failed to produce sufficient evidence that [d]efendants['] stated reason for the termination was pretextual or

6

that [d]efendants acted with discriminatory animus." As to the defamation claim, the trial court concluded that defendants carried their burden of demonstrating that the common interest privilege applied and that Telles failed to produce sufficient evidence that any statements were made with actual malice.

After the trial court entered judgment against her, Telles moved for a new trial, essentially asking the court to reconsider its order granting summary judgment. With respect to the discrimination claims, Telles claimed that she had set forth both disparate treatment and disparate impact theories of liability for her age and disability discrimination claims. She argued that the trial court did not have authority to summarily adjudicate the disparate impact theories of liability because WalMart failed to move on those claims. The trial court denied the motion. As to the purported disparate impact theories of liability, the trial court concluded that Telles had not properly alleged disparate impact theories of liability, so WalMart was not obligated to address them in their motion for summary judgment.

STANDARD OF REVIEW

The trial court may grant summary judgment if there is no triable issue of material fact and the issues raised by the pleadings may be decided as a matter of law. (Code Civ. Proc., § 437c, subds. (c), (f)(2); *Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813.) A moving defendant must show that one or more elements of the challenged cause of action cannot be established or that there is a complete defense to the cause of action.

7

(Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*).)

Once the moving defendant has carried its initial burden, the burden shifts to the plaintiff to show a triable issue of material fact with respect to the cause of action or defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 849.) The court must consider all of the evidence and the reasonable inferences from it in the light most favorable to the nonmoving party. (*Aguilar*, at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850.)

We review summary judgment orders de novo and apply the same legal standard as the trial court. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) We independently examine the record to determine whether there are triable issues of material fact and whether the moving party is entitled to summary judgment as a matter of law. (*Ibid.*) "'While we must liberally construe plaintiff's showing and resolve any doubts about the propriety of a summary judgment in plaintiff's favor, plaintiff's evidence remains subject to careful scrutiny.'" (*Doe v. Department of Corrections & Rehabilitation* (2019) 43 Cal.App.5th 721, 732-733.) We are not bound by the trial court's stated reasons, if any, and instead independently evaluate whether the record supports the trial court's conclusion. (*Prilliman v. United Air lines, Inc.* (1997) 53 Cal.App.4th 935, 951.)

DISCUSSION

A. *Forfeiture of Arguments*

Telles has forfeited many of her arguments on appeal by failing to comply with the rules of appellate procedure.

We presume that appealed judgments are correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) The appellant bears the burden of affirmatively demonstrating error and providing an adequate record on appeal. (*Ibid.*; *Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295 (*Maria P.*).) "In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287; Cal. Rules of Court, rule 8.204(a)(1)(B) & (C).) "Any reference in an appellate brief to matter in the record must be supported by a citation to the volume and page number of the record where that matter may be found. (Cal. Rules of Court, rule 8.204(a)(1)(C).) This rule applies to matter referenced at any point in the brief, not just in the statement of facts." (*Sky River LLC v. County of Kern* (2013) 214 Cal.App.4th 720, 741.) Further, an appellant cannot ""'rest on the bare assertion of error but must present argument and legal authority on each point raised.'"" (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 (*Hernandez*).) Failure to support an argument with requisite citations to the record or to any legal authority results in forfeiture of the issue. (*Ibid.*; *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590.) In addition, any argument not raised until the reply brief is forfeited absent a showing of

9

good cause for failing to raise it earlier. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*).)

By failing to cite the record and by failing to support her arguments with legal authority, Telles has forfeited the following arguments: (1) The trial court abused its discretion by sustaining WalMart's evidentiary objections; (2) the trial court could not summarily adjudicate Telles's age discrimination claim because defendants' notice of motion stated that WalMart was moving for summary adjudication of only the disability discrimination claim; (3) the trial court could not summarily adjudicate Telles's purported disparate impact theories of liability for age and disability discrimination because WalMart's notice of motion and memorandum of points and authorities in support of the motion did not include any argument about those theories of liability; and (4) the trial court erred by denying the motion for a new trial.

Telles has forfeited several additional arguments by failing to support the factual assertions made in support of those arguments with citations to the record. Those arguments are: (1) The trial court erred by determining on her defamation claim that she "did not provide sufficient evidence to defeat the common interest privilege by showing that [defendants] acted with malice"; (2) the trial court applied the wrong legal standard in ruling on WalMart's motion for summary judgment; and (3) Telles "suffered from a disability within the meaning of California law and [defendants] knew it" (initial capitalization, boldface, and underlining omitted). With respect to the first two arguments, Telles makes broad, conclusory statements about the evidence, including that

she submitted "more than enough evidence to allow a jury to find in [her] favor on discrimination and wrongful termination claims (causes of action one through seven)" and that on the issue of malice "there is a slew of triable issues in this regard." Such unsupported, conclusory statements about the evidence in the record are not sufficient to support those arguments. (*Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 [summary judgment arguments forfeited by the plaintiff's failure to cite any evidence in the record supporting his contention that "'a plethora of admissible evidence' indicate[d] a triable issue of fact exists on his claims of gender discrimination, hostile gender-based harassment, and retaliation"].) Moreover, because Telles has forfeited her argument that any of the alleged defamatory statements were made with malice, she cannot carry her burden of creating a triable issue of fact on the applicability of the common interest privilege. (*Cornell v. Berkeley Tennis Club* (2017) 18 Cal.App.5th 908, 949-950.)

The remainder of our discussion addresses only the arguments that Telles has not forfeited.[3]

---

[3] In her reply brief, Telles attempts to cure some of the record citation deficiencies in her opening brief, but she makes no showing of good cause for having failed to support and develop her arguments adequately in her opening brief. Absent such a showing, we decline to address points first raised in her reply brief. (*Allen, supra*, 234 Cal.App.4th at p. 52.)

B. *Age and Disability Discrimination Claims*

Telles contends that the trial court erred by granting summary judgment in favor of WalMart on her age and disability discrimination claims under the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.). We disagree.

FEHA prohibits an employer from terminating an employee on the basis of age or disability. (Gov. Code, § 12940, subd. (a).) We assume for the sake of argument that Telles was disabled within the meaning of FEHA. "In a summary judgment motion in 'an employment discrimination case, the employer, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of [the] plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory factors.'" (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861 (*Serri*); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354-355 (*Guz*).) If "'nondiscriminatory, [the employer's] true reasons need not necessarily have been wise or correct. [Citations.] While the objective soundness of an employer's proffered reasons supports their credibility . . . , the ultimate issue is simply whether the employer acted with a motive to discriminate illegally. Thus, "legitimate" reasons [citation] in this context are reasons that are facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination.'" (*Serri*, *supra*, at p. 861, italics omitted.) "'If the employer meets its initial burden, the burden shifts to the employee to 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a

discriminatory animus, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.'" (*Ibid.*, italics omitted.) The same test applies to discrimination claims based on age and disability.[4] (*Guz, supra*, 24 Cal.4th at pp. 354-356 [age discrimination]; *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 159-160 [disability discrimination].)

WalMart set forth competent, admissible evidence of legitimate, nondiscriminatory reasons for terminating Telles, namely, that Telles stole merchandise from the store by underpaying for some items by switching price stickers on those items and by not paying for one item. (*Guz, supra*, 24 Cal.4th at p. 357.) Telles does not dispute that theft constitutes a legitimate, nondiscriminatory reason for terminating her.[5] She maintains instead that a reasonable juror could nevertheless find WalMart's stated reason pretextual on the basis of (1) WalMart's failure to retain evidence related to the theft incident—i.e., the "selection" portion of the surveillance footage—and WalMart's purported failure to investigate the incident adequately, and (2) the timing of her

---

[4] Telles cites *Wallace v. City of Stanislaus* (2016) 245 Cal.App.4th 109, 122-123 (*Wallace*) for the proposition that "animus is not required in a disability case." *Wallace* stands for the proposition that in disability discrimination cases involving direct evidence of discrimination the employee need not prove that the employer acted with animus or ill will. (*Id.* at pp. 131-132.) Such direct evidence is not present here, so *Wallace* is inapplicable.

[5] In her reply brief, Telles for the first time appears to question whether stealing less than $25 worth of merchandise constitutes a legitimate reason for termination. Telles failed to raise that argument in her opening brief and has not demonstrated good cause for that failure, so the argument is forfeited. (*Allen, supra*, 234 Cal.App.4th at p. 52.) In any event, the argument is without merit. (See, e.g., *King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433 (*King*) [breach of company's integrity policy constitutes legitimate reason for termination].)

13

termination in relation to WalMart's elimination of the people greeter position and the purported threat to Telles's job that was made at that time. These arguments lack merit.

The evidence as a whole, when viewed in the light most favorable to Telles, is insufficient to permit an inference that WalMart's stated reason for terminating Telles is unworthy of credence and that discrimination was the actual motivation. First, Telles has forfeited any argument about the contents of the surveillance footage by failing to include the exhibit containing the surveillance footage in the record on appeal. (*Maria P.*, *supra*, 43 Cal.3d at p. 1295.) Second, Telles fails to make any intelligible argument about how the omission of the portion of the surveillance footage in which she selected items to purchase demonstrates that WalMart's proffered reason for terminating her—that she stole merchandise—was pretextual. She claims that we should infer from the omission of the selection portion of the surveillance footage that such footage is unfavorable to WalMart—for instance, that it could show that she did not act suspiciously when she selected the merchandise. Assuming for the sake of argument that is what the selection portion of the footage would show, it does not raise a reasonable inference that WalMart's reason for terminating Telles was pretextual. Even if Telles did not act suspiciously in selecting the merchandise, it is still undisputed that she stole it, which is a legitimate, nondiscriminatory reason to fire her.[6]

---

[6] In her reply brief, Telles raises various additional arguments concerning the selection portion of the video. Because Telles failed to raise those arguments in her opening brief and has not demonstrated good cause for that failure, we decline to address them. (*Allen*, *supra*, 234 Cal.App.4th at p. 52.)

Telles's claims about WalMart's purported failure to adequately investigate are similarly unavailing. She maintains that WalMart's investigation was inadequate and violated company policy because (1) it did not include interviews of the associate who assisted her during checkout and the female employee who was brought into the asset protection office along with Telles, (2) WalMart did not retain the selection portion of the surveillance footage, and (3) the asset protection employees did not check the "mark up mark down" reports to verify what merchandise was on clearance. Assuming for the sake of argument that all of those claims about WalMart's investigation are true, they still have no tendency to show that WalMart's stated reason for terminating Telles was pretextual. Brown and Martinez, two of the store's asset protection employees, observed Telles switching price tags on items and placing one item in her bag at checkout without scanning it. They immediately addressed the issue with Telles, gave her an opportunity to explain herself, and took steps to determine which items were available in the clearance aisle. Given those facts, WalMart's failure to take the additional investigative steps identified by Telles does not raise a reasonable inference of pretext or discriminatory intent.

Because there exists surveillance footage of Telles's misconduct, all of the cases Telles cites in which an employer's failure to investigate or failure to follow its own policies raised a reasonable inference of an employer's discriminatory intent are inapposite. None of those cases includes any such direct evidence of the employee's misconduct. (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 277-278 [failure

15

to contact potential witnesses identified by the employee regarding allegations of inappropriate conduct toward a nonemployee]; *Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 239 [failure to follow employer's policy "with respect to layoffs occurring during a restructuring"].)  In fact, in one of the cases Telles cites in which WalMart was the employer, the court found that the investigation was inadequate in part because WalMart "*did not check to see if there was a videotape of the incident.*"  (*Deffenbaugh-Williams v. Wal-Mart Stores* (5th Cir. 1998) 156 F.3d 581, 590, italics added, opn. reinstated after rehearing en banc at *Williams v. Wal-Mart Stores, Inc.* (5th Cir. 1999) 182 F.3d 333 [*per curiam*].)

Regardless of the advisability of conducting further investigation and whether policy dictated that any such further investigation be conducted, under the circumstances presented in this case, Telles fails to carry her burden of demonstrating that WalMart's failure to follow its own policies raises a reasonable inference that WalMart's proffered reason for terminating Telles was pretextual.

Telles next asks us to infer pretext from the timing of her termination.  She claims that pretext can be inferred from the fact that one week before she was terminated Enriquez purportedly "encouraged her to retire in lieu of applying for the new Customer Host position."  None of the evidence that she cites supports the proposition that Enriquez "encouraged" Telles to retire instead of applying for the customer host position or any other position.  Instead, it is undisputed that Enriquez told Telles that *if* she could not find an open position, she should "'[s]tart thinking of retirement.'"  That is what

16

Telles testified to and what she reiterated in her later declaration. Telling Telles that she should consider retirement if she could not find another open position is not the same as telling Telles that she *should* retire and not apply for other positions.

For all of the foregoing reasons, we conclude that Telles failed to raise a triable issue of material fact that WalMart's stated reasons for her termination were pretextual. We therefore affirm the trial court's granting of summary judgment on Telles's age and disability discrimination claims.**7**

C. *Failure To Provide Reasonable Accommodation and Failure To Engage in the Interactive Process Under FEHA*

Telles argues that the trial court erred by granting summary adjudication on her FEHA claims for failure to provide reasonable accommodation for her disability and to engage in the interactive process. These arguments fail.

Under FEHA, "it is an unlawful employment practice for an employer or covered entity to fail to make a reasonable accommodation for the known physical or mental disability or medical condition of an applicant or an employee. [Citation.] It is also an unlawful employment practice under the FEHA for an employer or other covered entity to fail to engage in a timely, good faith, interactive process with the employee or

---

**7** Telles contends that summary adjudication on the fifth, sixth, and seventh causes of action (failure to prevent discrimination and retaliation, wrongful termination, and intentional infliction of emotional distress) should be reversed if we reverse summary adjudication of her employment discrimination and defamation claims. Telles does not advance any independent argument about those other causes of action. Because we are affirming the trial court's ruling on the employment discrimination and defamation claims, we need not consider Telles's argument about those additional causes of action.

17

applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition." (*Talley v. County of Fresno* (2020) 51 Cal.App.5th 1060, 1069; Gov. Code, § 12940, subds. (m), (n).) "An employer's failure to provide reasonable accommodation is a violation of the statute even in the absence of an adverse employment action." (*King*, *supra*, 152 Cal.App.4th at p. 442.)

Telles has forfeited her arguments about these causes of action by failing to provide adequate citations to the record and support her arguments with legal authority. The only record citations that Telles provides in the argument section about both of these claims are to the assertions that Brown encouraged people with light duty restrictions not to take the customer host position and that WalMart purportedly mistreated other former employees. A trier of fact could not reasonably infer from those assertions that WalMart failed to reasonably accommodate Telles's disability or failed to engage in the interactive process. Telles fails to provide record citations to support any of her other factual assertions in this section, such as that she told both Brown and Enriquez that she "need[ed] light duty accommodations." We therefore consider her arguments forfeited. (*Hernandez*, *supra*, 37 Cal.App.5th at p. 277.)

In any event, the arguments fail on the merits. Telles argues that WalMart's duty "to engage and accommodate" was triggered when Telles purportedly told both Brown and Enriquez that she wanted to transition into the customer host position and that "she

18

would need light duty accommodations." However, the only evidence that Telles cites in her reply brief that supports the proposition that she told Enriquez and Brown "that she would need accommodations in the new role as she did as a People Greeter" is her own declaration.[8] In it, Telles stated that after Enriquez's meeting with the people greeters, Telles told Enriquez that she "was worried about finding a new job because of [her] age and the fact that [she] was on restricted duties." She further stated that when she told Brown that she was interested in the new customer host position that she told him that she was "under restrictions due to [her] ongoing workers' compensation claim" but "felt" that she "could do the job" anyway.

Those statements contradict Telles's deposition testimony. When asked about the meeting at which she told Brown that she was interested in the customer host position, Telles denied discussing "anything else" with Brown at that time. Similarly, in describing her conversation with Enriquez after his meeting with the people greeters, she testified that she asked what would happen if she was unable to find an open position, he said she should start thinking about retirement, and "that was all." When "a party's self-serving declarations contradict credible discovery admissions and purport to impeach that party's own prior sworn testimony, they should be disregarded." (*Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 473; *Scalf v. D.B. Log*

---

[8]     She also cites Enriquez's deposition testimony about his meeting with the people greeters in general and a meeting he had with Telles individually about the elimination of that position. That testimony does not show that Telles told Enriquez that she needed an accommodation. Rather, Enriquez testified that Telles said nothing during the meeting and stayed quiet the entire time.

19

*Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1522 [a party opposing summary judgment is barred "from filing a declaration that purports to impeach his or her own prior sworn testimony"].)  Telles's contradictory and self-serving statements in her declaration therefore did not create a triable issue of material fact as to whether Telles requested a reasonable accommodation.

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs of appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.


We concur:

RAMIREZ
P. J.

CODRINGTON
J.