Filed 5/21/26

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| DANIEL HUSBAND, | B342334 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCV34888) |
| v. | |
| TARGET CORPORATION, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas D. Long, Judge. Affirmed.

DEN Labor Law, Daniel E. Nomanim, and Joseph S. Socher for Plaintiff and Appellant.

Seyfarth Shaw, Mandana Massoumi, David J. Kim, and Phillip J. Ebsworth for Defendant and Respondent.

* * * * * *

California's Fair Employment and Housing Act (Gov. Code, § 12900 et seq.)[1] (FEHA) defines and prohibits several unlawful employment practices, including (1) "discriminat[ing] against a person" because of a "physical" or "mental disability," (2) "fail[ing] to make reasonable accommodation" for a "known physical or mental disability," and (3) "fail[ing] to engage in a timely, good faith, interactive process . . . to determine effective reasonable accommodations." (§ 12940, subds. (a), (m)(1) & (n).) An employer's knowledge of an employee's disability is a prerequisite to FEHA liability under any of those theories: An employer cannot discriminate against an employee on the basis of a disability if it does not *know* of that disability (*Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1247 (*Avila*)), and an employer cannot fail to reasonably accommodate (or fail to engage in an interactive process to reach such an accommodation) if it does not *know* of a disability necessitating accommodation (§ 12940, subds. (m)(1) & (n) [requiring a "known" disability]).

When an employee has not disclosed his disability to his employer, under what circumstances will the employer be charged with knowledge of that disability (and hence potentially liable under FEHA)? For purposes of a FEHA claim for discrimination, an employer's knowledge of a disability will be inferred "only . . . when the fact of disability is the *only* reasonable interpretation of the known facts." (*Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 237, italics added (*Brundage*).) For purposes of FEHA claims for failure to make a reasonable accommodation or failure to engage in the interactive process, an

---

1       All further statutory references are to the Government Code unless otherwise indicated.

employer's knowledge of a disability will be inferred only if the disability is "obvious" or its "observed symptoms" "are so obviously manifestations of an underlying disability" that the existence of a disability "always follow[s]" from the observed symptoms  (E.g., *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 601 (*Soria*); *Pensinger v. Bowsmith, Inc.* (1998) 60 Cal.App.4th 709, 724-725 (*Pensinger*), overruled on other grounds in *Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6.)  Applying these standards, is an employer charged with knowledge that an employee suffers from an undisclosed diagnosis of bipolar disorder because, on two occasions, the employee was unusually "aggressive" and made "irrational" comments that caused his supervisor to be "concerned for his . . . mental state"?  We hold that the answer is no, as a matter of law, and accordingly affirm the trial court's grant of summary judgment for the employer.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

#### A.     *Initial hiring*

In October 2020, Target Corporation (Target) hired Daniel Husband (plaintiff) to work as a "fulfillment expert" in its store in Burbank, California.  Although the "new hire" materials plaintiff received explained that Target would attempt to accommodate any "known physical or mental limitation(s)" of its employees, plaintiff did not at the time of orientation or at any time thereafter inform any Target "official" that he had been diagnosed with bipolar I disorder.[2]

---

[2]     Although plaintiff in his declaration opposing summary judgment declared that he "shared" his "diagnos[is]" "with the group" at orientation, and in his opening brief on appeal asserts

**B.** *Incidents*

For the first 20 months of his employment, plaintiff had no negative incidents at Target. That changed in June and July of 2022.

1. *June 9, 2022 incident*

On June 9, 2022, plaintiff entered the store where he worked while off duty to purchase items as a customer. While there, plaintiff became visibly upset with a Target employee; the employee said plaintiff also "used profanity," but plaintiff denied the use of such words. Plaintiff was soon thereafter verbally counseled by a supervisor about the incident, and a written counseling memo for that incident was subsequently issued on July 11, 2022.

2. *July 7, 2022 incident*

Plaintiff arrived for his scheduled night shift on July 7, 2022 "look[ing] very deflated." He "suddenly got angry," recounting that he had been "hitting himself in his temple and that the fulfillment work load"—that is, the orders for retrieving inventory—were *themselves* "laughing at him." He became "highly emotional" and "visibly upset," and proceeded to point fingers and "yell" at a coworker. When plaintiff's supervisor Daniel Abts (Abts) asked plaintiff what he could do to help,

_____

(without citation) that he "mention[ed]" his diagnosis to "human resources staff conducting the [orientation] training," we disregard plaintiff's declaration because it contradicts his prior deposition testimony that he did *not* share his diagnosis with any human resources or other Target "official" (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22), and we disregard plaintiff's statement in his opening brief because it finds no support in the record.

plaintiff responded that he wanted to go home; Abts sent him home.

This conduct was "out of the ordinary" for plaintiff, and Abts found the incident "somewhat disturbing." That night, Abts sent an email to store director Alfredo Cantu, human resources executive team lead Nadine Wishart, and two of the store's other department supervisors, Michael Govea and Raul Pereira, detailing the events and expressing Abts's "concern[] for [plaintiff's] mental state."

3. *July 8, 2022 incident*

Plaintiff arrived for his shift the next night, on July 8, 2022. While looking "shaky" and "distraught" and while "breathing heav[ily]," plaintiff told Abts that he thought he "killed" his stepmom by speaking a word and then asked Abts and others if he (plaintiff) had killed anyone at the Target store. Abts found plaintiff's statements "very disturbing" and his conduct "pretty erratic"; Abts "wanted [plaintiff] out of the store" to "de-escalate the situation." Because plaintiff's statements were "very irrational," Abts believed that plaintiff "needed help," although he "didn't know what kind of help," and believed that "a hospital would be better than the police." So Abts sent plaintiff home with a recommendation that he "get examined by a doctor/psych professional." Abts then sent Cantu, Wishart, Pereira, and Govea an email in which he detailed these events.

Plaintiff and his father returned to the store a few hours later and spoke with Pereira, who had taken over for Abts as manager for that shift. They demanded to know why plaintiff had been sent home. Plaintiff's father insisted that plaintiff was "fine." Although Pereira later reported that plaintiff said he "did not need to see a doctor" and that there was "nothing wrong with

5

him," plaintiff's father denied that those words were ever spoken. Pereira encouraged plaintiff and his father to return during the morning shift. Pereira then sent an email to Cantu, Wishart, Abts, and Govea detailing these events.

In the mid-morning of July 9, 2022, plaintiff and his father again returned to the store and spoke with Cantu and Sebrina Ortiz, the human resources team lead. At that meeting, Cantu and Ortiz explained that plaintiff's conduct had frightened other Target employees. Although Cantu and Ortiz reported that plaintiff furiously yelled "'Fuck this!' 'Fuck Target!' 'I don't have to deal with this fucking shit!!'", plaintiff's father denied that plaintiff had this outburst.

### C. *Termination*

Later in the day of July 9, 2022, Cantu, Wishart, and Emma Cade, Target's districtwide human resources business partner, made the decision to terminate plaintiff for violating Target's workplace violence policy. At the time that decision was made, plaintiff had not informed Target that he suffered from bipolar disorder and had not requested any accommodations for that mental disability.

### D. *Post-termination incidents*

#### 1. *July 10, 2022 incident*

After Target had made the decision to terminate plaintiff but before informing him, plaintiff arrived barefoot at the Target store on July 10, 2022, walked into the employee-only area, grabbed a set of the store's security keys, ran out of the store with the keys, claimed to be someone else, threw the keys at another Target employee while shouting, "I don't want this shit!," and then started to disrobe before marching away. The entire incident was captured by surveillance cameras.

6

### 2. *July 18, 2022 medical note*

On July 18, 2022, plaintiff submitted to Target a note from a medical provider stating that plaintiff had been "evaluated and deemed able to return to work"; the note did not disclose any further facts, and did not disclose any mental health diagnosis. Plaintiff was informed on that day that he had been terminated from his employment at Target.

### 3. *July 29, 2022 call to hotline*

On July 29, 2022, plaintiff called Target's "Integrity Hotline" asking to be reinstated at his job. Plaintiff did not receive a response, but Target reviewed plaintiff's claims and concluded "the termination decision was in accordance with Target policy and procedure and will stand."

### 4. *September 23, 2022 request for reinstatement*

On September 23, 2022, plaintiff—through counsel he had retained—wrote to Target demanding his reinstatement on the ground that plaintiff had been discriminated against due to his mental disability. Target acknowledged receipt of the correspondence but did not respond.

## II. Procedural Background

### A. *Complaint*

On November 2, 2022, plaintiff sued Target for (1) discrimination on the basis of mental disability under FEHA, (2) failure to provide reasonable accommodation for his mental disability under FEHA, and (3) failure to engage in the interactive process under FEHA.[3] He prayed for compensatory as well as punitive damages.

---

[3] Plaintiff also sued Target for (1) defamation and (2) the tort of false light, but later dismissed those claims. Plaintiff also sued Abts, but later dismissed him as a defendant.

7

**B.** *Summary judgment*

Target moved for summary judgment on plaintiff's FEHA claims as well as summary adjudication of his prayer for punitive damages.

A week before his opposition was due, plaintiff moved to continue the summary judgment hearing to conduct additional discovery regarding Target's internal deliberations in response to plaintiff's September 2022 reinstatement request, which plaintiff asserted was a "vital part" of his prayer for punitive damages. The trial court denied the continuance.

After plaintiff filed his opposition to the summary judgment motion and Target filed its reply, the trial court held a hearing and then issued a 17-page order granting summary judgment for Target. On plaintiff's claim for disability discrimination under FEHA, the court ruled that summary judgment was appropriate because the undisputed facts established that (1) Target "had no knowledge of [p]laintiff's [mental] disability when it decided to terminate him" because there was more than one "reasonable interpretation" of plaintiff's conduct at work on July 7 and 8, 2022 other than a "manic episode" arising from a mental disability, and (2) Target had a "legitimate and non-discriminatory reason" for terminating plaintiff—namely, because Target genuinely believed that plaintiff had made "threats or violence against coworkers" in violation of company policy. On plaintiff's claims for failure to make reasonable accommodations and engage in the interactive process, the court ruled that summary judgment was appropriate because the undisputed facts showed plaintiff never disclosed that he suffered from a mental disability or that he sought

8

accommodation. In light of these rulings, Target's separate challenge to the prayer for punitive damages became moot.

### C. *Appeal*

Following the entry of judgment for Target, plaintiff timely filed this appeal.

## DISCUSSION

Plaintiff argues that the trial court erred in (1) granting summary judgment on his three FEHA claims, (2) granting summary adjudication of his prayer for punitive damages, and (3) declining to continue the summary judgment hearing to allow for additional discovery.

## I. Pertinent Law

### A. *FEHA*

"FEHA identifies several 'unlawful employment practice[s].'" (*Shirvanyan v. Los Angeles Community College Dist.* (2020) 59 Cal.App.5th 82, 88 (*Shirvanyan*).) Among them is when an employer (1) "discriminate[s]" against an employee "in compensation or in terms, conditions, or privileges of employment" "because of the [employee's] physical [or] mental disability" (§ 12940, subd. (a)), (2) "fail[s] to make reasonable accommodation for the known physical or mental disability of an . . . employee" (*id.*, subd. (m)(1)), or (3) "fail[s] to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee . . . with a known physical or mental disability or known medical condition" (*id.*, subd. (n)). Although an employer's failure to engage in an interactive process aimed at reasonably accommodating a disability "necessarily implicates" its failure to reasonably accommodate that disability (*Moore v. Regents of*

9

*University of California* (2016) 248 Cal.App.4th 216, 242), each of the three above-enumerated unlawful employment practices can give rise to an independent FEHA claim (*ibid.*; *Shirvanyan*, at p. 89).

"Mental disability" for purposes of FEHA includes "any mental or psychological disorder or condition," which in turn includes "mental illness" (§ 12926, subd. (j)(1)) and specifically, bipolar disorder (Cal. Code Regs., tit. 2, § 11065, subd. (d)(1)); it does not include "the unlawful use of controlled substances or other drugs" (*Pensinger*, *supra*, 60 Cal.App.4th at p. 720).

        1.     *Discrimination because of a disability*

Because FEHA prohibits discrimination only when motivated by a "discriminatory intent" (*Soria*, *supra*, 5 Cal.App.5th at pp. 590-591), California employs a burden-shifting mechanism to suss out the existence of that intent. The plaintiff-employee must first establish a prima facie case of discrimination by establishing that "(1) [he] suffered from a disability, (2) [he] was otherwise qualified to do his [] job, with or without reasonable accommodation, and (3) [he] was subjected to adverse employment action because of the disability." (*Castro-Ramirez v. Dependable Highway Express, Inc.* (2016) 2 Cal.App.5th 1028, 1037; *Green v. State of California* (2007) 42 Cal.4th 254, 262; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354-355 (*Guz*).) If the plaintiff-employee makes out a prima facie case, the burden shifts to the employer to set forth a legitimate and nondiscriminatory reason for the "adverse employment action" at issue. (*Guz*, at pp. 355-356.) If the employer sets forth such a reason, the burden "shifts back to the employee to prove" intentional discrimination. (*Swanson v. Morongo Unified School*

10

*Dist.* (2014) 232 Cal.App.4th 954, 965; *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.)

Of course, the only way a plaintiff-employee can establish that he was subject to an adverse employment action *because of* a disability is if the plaintiff-employee "show[s] that the employer had knowledge of . . . [that] disability" at the time the adverse employment action was taken. (*Soria, supra,* 5 Cal.App.5th at pp. 590-591; *Brundage, supra,* 57 Cal.App.4th at p. 236 ["An adverse employment decision cannot be made 'because of' a disability, when the disability is not known to the employer"]; *Avila, supra,* 165 Cal.App.4th at p. 1247 [same]; cf. *id.* at p. 1251 ["Evidence that a decision maker learned of a plaintiff's disability *after* deciding to take adverse employment action is . . . irrelevant to determining whether the decision maker acted from a discriminatory animus"].) For this purpose, an employer "'knows an employee has a disability'" when (1) "'the employee tells the employer about his condition'" or (2) "'when the employer otherwise becomes aware of the condition, such as through a third party [disclosing the condition] or by observation.'" (*Faust v. California Portland Cement Co.* (2007) 150 Cal.App.4th 864, 887 (*Faust*).) Where, as here, neither the employee nor a third party has disclosed the employee's mental disability, "knowledge" of that disability "will only be imputed to the employer" through its observation of the "underlying facts" "when the fact of disability is the *only* reasonable interpretation of the known facts." (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1167 (*Featherstone*); *Avila,* at p. 1248; *Brundage,* at p. 237; cf. *Soria,* at p. 593 [employer must "know the underlying facts" but not "whether those facts fit into

11

the statutory definition of 'disability' under FEHA"]; *Faust*, at p. 887 [same].)

         2.     *Failure to reasonably accommodate a disability and to engage in a good faith interactive process to determine reasonable accommodations*

FEHA places an "affirmative duty" upon employers to "'make [a] reasonable accommodation for the known disability of an employee unless doing so would produce undue hardship to the employer's operation.'" (§ 12940, subd. (m)(1); *Soria, supra*, 5 Cal.App.5th at pp. 597-598; *Shirvanyan, supra*, 59 Cal.App.5th at p. 88; Cal. Code Regs., tit. 2, § 11068, subd. (a).)  FEHA also charges employers with a related, precursor duty to "engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations . . . in response to a request for reasonable accommodation by an employee . . . with a known . . . disability." (§ 12940, subd. (n); *Soria*, at p. 600; *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1013 (*Scotch*).)

These duties only arise when the employee's disability is "known" to the employer:  Not only is this prerequisite explicitly set forth in FEHA's statutory text (§ 12940, subds. (m)(1) & (n)), but it is implicit in the very nature of the duties themselves— "unless there is some evidence an employer knows an employee is suffering from a disability, it is impossible for an employee to claim . . . that an employer refused to accommodate the disability" (*Pensinger, supra*, 60 Cal.App.4th at p. 722) or to claim that the employer refused to engage in the interactive process (*Soria, supra*, 5 Cal.App.5th at p. 600; *Scotch, supra*, 173 Cal.App.4th at p. 1013).  In most cases, "[t]he employee bears the burden of giving the employer notice of the disability," and that

12

notice is what "triggers the employer's burden to take 'positive steps' to accommodate the employee's limitations" and to thereafter provide reasonable accommodations. (*Raine v. City of Burbank* (2006) 135 Cal.App.4th 1215, 1222; *Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 260; *Avila*, *supra*, 165 Cal.App.4th at p. 1252; *Soria*, at pp. 598, 600; *Pensinger*, at pp. 722-724; *Featherstone*, *supra*, 10 Cal.App.5th at p. 1167; *Kao v. University of San Francisco* (2014) 229 Cal.App.4th 437, 450; *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 954 [no "magic words" are necessary when employee gives notice].) To be sure, notice from an employee is not the *only* way to trigger the duties to reasonably accommodate or to engage in the interactive process, as those duties can also be triggered if the employer learns of the employee's disability from a third party or "by [its own] observation." (Cal. Code Regs., tit. 2, § 11069, subd. (b)(1)–(2).) But an employer will be charged with knowledge of a disability by observation only if the observed "symptoms are . . . so obviously manifestations of an underlying disability" that the existence of a disability "always follow[s]" from the observed symptoms. (*Pensinger*, at pp. 724-725; *Kao*, at p. 450 [imputing knowledge when the disability is "obvious"]; *Soria*, at p. 600 [same].)

> 3. *Pertinent FEHA interpretive policy*

FEHA is to be "construed liberally" to "accomplish[]" its stated "purposes." (§ 12993, subd. (a); *Robinson v. Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 243.) Although FEHA's purposes include "banning discrimination" on the basis of disabilities and mandating "reasonable accommodation" for disabilities (§§ 12993, subd. (c), 12940, subds. (a), (m)(1) & (n)), those purposes do not support imposing liability

13

upon employers for adverse employment actions taken in response to conduct that, as far as the employer knows, does *not* signify a disability or for failing to accommodate an unknown disability; to construe FEHA as providing relief in such situations is to burden the parties and the courts, potentially through trial, with cases that involve conduct that falls outside both FEHA's text and its purposes.  This is precisely why courts do not "demand" that employers be "clairvoyan[t]" (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 443), and why courts have insisted that, in cases where an employer is not *told* that an employee has a disability, an employer will be charged with knowing an employee has a disability only when the facts known to the employer make the disability "the *only* reasonable interpretation" of those facts rather than *a* reasonable interpretation or even the *more or most* reasonable interpretation.

### B.    *Summary judgment*

A defendant is entitled to summary judgment if it can "show that there is no triable issue as to any material fact." (Code Civ Proc., § 437c, subd. (c).)  The defendant bears the initial burden of establishing that the plaintiff's cause of action has "no merit" by showing that the plaintiff cannot establish "[o]ne or more elements of [his] cause of action."  (*Id.*, subds. (o) & (p)(2).)  If this burden is met, the "burden shifts" to the plaintiff "to show that a triable issue of one or more material facts exists as to th[at] cause of action."  (*Id.*, subd. (p)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)  Applying this framework to a FEHA claim (including a discrimination claim that employs the burden-shifting mechanism discussed above), the employer bears the initial burden to disprove an element of

14

the plaintiff-employee's prima facie case or to adduce evidence supporting a legitimate, nondiscriminatory reason for its adverse employment action. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861; *Cheal v. El Camino Hospital* (2014) 223 Cal.App.4th 736, 741.) If it does so, then the burden shifts to the plaintiff-employee to produce "substantial responsive evidence" that all elements of the prima face case exist or that "the employer acted with a discriminatory *animus*" (including by showing that the employer's "stated reasons were untrue or pretextual"). (*Serri*, at pp. 861-862; see also *Guz*, *supra*, 24 Cal.4th at pp. 356-357.)

### C.  *Standard of review*

We review de novo a trial court's grant of summary judgment as well as its statutory construction of FEHA. (*Tansavatdi v. City of Rancho Palos Verdes* (2023) 14 Cal.5th 639, 652.)

## II.  Analysis

Plaintiff argues that the trial court erred in granting Target's summary judgment motion because there are triable issues of fact as to whether (1) Target knew of his mental disability, (2) Target terminated his employment "because of" that disability, (3) Target reasonably accommodated his mental disability and engaged in the interactive process to determine reasonable accommodation, and (4) punitive damages are available. Plaintiff further argues that the trial court erred in denying his request to continue the summary judgment hearing.

### A.  *Target's knowledge*

It is undisputed that plaintiff never informed Target that he has bipolar disorder. (Cf. *Soria*, *supra*, 5 Cal.App.5th at p. 592

15

[telling coworkers of a disability insufficient to impart knowledge to employer].)

The record also does not raise a triable issue of any material fact as to whether knowledge of plaintiff's bipolar disorder should be imputed to Target based on what it observed. During the July 7 and 8, 2022 incidents, plaintiff was acting "erratically" and "emotional" (that is, "angry" and "upset") while shaking and breathing heavily; plaintiff also made two statements (about his inanimate work orders laughing at him and querying whether he had killed his stepmother and coworkers with his words) that were undeniably irrational. While emotional and irrational conduct is a symptom of bipolar disorder and while one reasonable interpretation of that behavior is that plaintiff suffered from a mental disability, that is not "the *only* reasonable interpretation" of plaintiff's behavior (*Featherstone*, *supra*, 10 Cal.App.5th at p. 1167), nor does the existence of a mental disability "always follow" from these behaviors (*Pensinger*, *supra*, 60 Cal.App.4th at pp. 724-725). For example, plaintiff's conduct could also be reasonably interpreted as the side effect of ingesting illegal substances or a combination of prescribed medications or a manifestation of sleep deprivation.[4]

Contrary to what plaintiff asserts, Abts's conclusion that plaintiff "needed help" and that "a hospital would be better than the police" for plaintiff to obtain that help—and Abts's consequent decision to send plaintiff home after the July 8, 2022

---

[4] Indeed, plaintiff himself acknowledged that there were "a litany of other reasons other than potentially a disability which could cause an individual to have difficulty discerning truth from reality."

16

incident with a recommendation that he "get examined by a doctor/psych professional"—does not alter our conclusion. That is because Abts's subjective and professedly "[non-]expert" opinion that plaintiff might be suffering from an unknown medical issue which may or may not have required examination by a mental health professional, while relevant, does not mean that "the *only* reasonable interpretation" of plaintiff's conduct was that he has a mental disability. The pertinent standard for imputing knowledge in this context turns on the "reasonable"—that is, an objective—interpretation of the observed facts, and that objective analysis demonstrates that there are multiple, potential reasons for plaintiff's behavior; as a result, a diagnosis of mental illness is not the only reasonable interpretation of that behavior. To give controlling weight to one co-worker's untrained, *subjective* "personal opinion," as plaintiff suggests, would make the standard for imputing knowledge—and hence the employer's liability under FEHA—turn on the vagaries of the nature of the workplace, the co-worker's knowledge (or lack of knowledge) of mental illnesses, and the co-worker's willingness to speculate (or opposing counsel's doggedness in pushing the co-worker to speculate during post-termination depositions, much as plaintiff's counsel pushed Abts to offer his "personal" and non-"expert" opinion that plaintiff had been having "a mental breakdown" of some sort).[5]

---

[5] Plaintiff also cites Cade's deposition testimony that she would have offered plaintiff "Team Member Life Resources" counseling had she been in Abts's shoes, but this testimony is of no weight because Cade admitted that she was "not aware of the entire conversation" between plaintiff and Abts.

Precedent reinforces our application of this standard. An employer has been charged with knowledge of an employee's mental disability when it has received a note from medical professionals indicating treatment for such a disability (*Taylor v. Phoenixville School Dist.* (3d Cir. 1999) 184 F.3d 296, 314-316 [note discusses "psychiatrist" and plaintiff's prescription for lithium]; *Faust, supra*, 150 Cal.App.4th at p. 887) or symptoms that are consonant only with a disability (*Hedberg v. Indiana Bell Tel. Co.* (7th Cir. 1995) 47 F.3d 928, 934 ["frequent seizures" are consonant with a disability]). But knowledge of a disability has not been imputed based on an employer's observation of "erratic" behavior (*Featherstone, supra*, 10 Cal.App.5th at pp. 1155-1156) or even when the employer has been told by the employee's relative that the employee was "mentally falling apart" and had "lost it" (*Miller v. National Casualty Co.* (8th Cir. 1995) 61 F.3d 627, 629-630). Judged against this case law applying the governing standard, plaintiff's two incidents of erratic and irrational behavior were insufficient to impart knowledge of a mental disability to Target.

Plaintiff resists our conclusion with four further arguments.

First, plaintiff points to Federal Circuit court decisions that equate "conduct resulting from a disability" with the "disability itself" (*Gambini v. Total Renal Care, Inc.* (9th Cir. 2007) 486 F.3d 1087, 1093; *Humphrey v. Memorial Hospitals Assn.* (9th Cir. 2001) 239 F.3d 1128, 1139), and appears to suggest that Target's awareness of plaintiff's conduct associated with bipolar disorder amounts to an awareness of the disability itself. We reject that suggestion. It is wholly inconsistent with the governing standard for imputing knowledge because it would replace the test that

18

asks whether the only reasonable interpretation of the observed symptoms together is a mental disability with a test that equates observation of any single symptom of a mental disability with knowledge of the mental disability. In effect, plaintiff's proffered test effectively assumes that every supervisory employee— including, as is the case here, a first-line supervisor in a retail outlet—has mastered the latest Diagnostic and Statistical Manual enumerating all mental illnesses and all of their symptoms; this is an unwarranted assumption that would vastly expand FEHA liability beyond its purpose of protecting employees that an employer *knows* have a disability from discrimination and of reasonably accommodating *known* disabilities.

Second, plaintiff urges that it is inequitable to foreclose his disability-based FEHA claims because he was unable to report his disorder to Target during the July 2022 incidents because it is undisputed that he was not consciously aware of the "manic episodes" caused by his bipolar disorder as they were happening. To the extent plaintiff is asking us to abrogate the knowledge requirement, we must decline that invitation because an employer's knowledge of a disability is a statutorily required prerequisite for liability under FEHA for disability discrimination, failure to accommodate, and failure to engage in the interactive process. Nor do we see an equitable reason to dispense with—or even relax—the knowledge requirement in this context. An employee who needs reasonable accommodations— such as, here, time off during a manic episode so as not to be subject to an adverse employment action based on an otherwise undetected disability—can voluntarily disclose that disability to the employer upon being hired or anytime thereafter: FEHA

19

prohibits the employer from discriminating against the employee based on that disclosure, and the employer's knowledge obligates it to reasonably accommodate that disability; indeed, several Target employees indicated that they would have accommodated plaintiff's bipolar disorder had they known.[6]

Third, plaintiff repeatedly urges that his "unusual" and "bizarre" conduct was enough by itself to put Target on notice that he had a mental disability. We reject this argument because it is inconsistent with the pertinent standard and because it sets the bar so low that every case in which an employee acts in any sense out of the ordinary would be entitled to be presented to a jury.

Fourth and finally, plaintiff asserts that his comments and those by his father on July 9, 2022, that plaintiff was "fine" did not negate the significance of plaintiff's conduct during the earlier July 7 and July 8, 2022 incidents. Although an employee's subsequent disclaimer that he was not suffering from a mental disability can preclude imputation of knowledge of such a disability (*Prilliman*, *supra*, 53 Cal.App.4th at p. 954), our analysis has focused on plaintiff's conduct on July 7 and 8, 2022—and without regard to any subsequent disclaimers.

\* \* \*

---

**6** Plaintiff simultaneously accuses Target of *not* asking about any disabilities when hiring him while proclaiming that Target could *not* have asked about any disabilities while hiring him. Apart from being an argument grounded in "heads I win, tails you lose" sophistry, it is irrelevant. An employer would not be mandating disclosure of a disability simply because an employee who wishes to avail himself of FEHA's protections must put the employer on notice of his entitlement to those protections.

Because we have concluded that summary judgment was warranted on all three of plaintiff's FEHA claims, we have no occasion to reach plaintiff's challenge to dismissal of his punitive damages requests because there is no longer an underlying FEHA claim to which punitive damages can attach. And because we have concluded plaintiff no longer has a viable claim for punitive damages, we have no occasion to reach plaintiff's challenge to the trial court's order declining to continue the summary judgment hearing so that plaintiff could develop further discovery on the propriety of punitive damages.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>**.


_____, P.J.
HOFFSTADT


We concur:


_____, J.
MOOR


_____, J.
KIM (D.)

21